# ROBERTSON *v.* BRADBURY.

## ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 58. Argued November 22, 1889. — Decided December 16, 1889.

Section 7 of the act of March 3, 1883, 22 Stat. 488, c. 121, repealing Rev. Stat. §§ 2907, 2908, took effect immediately upon the passage of the act.

Contemporaneous construction by the Treasury Department of a repealing clause in the customs-laws is entitled to weight in favor of importers.

Prior to March 7, 1883, a collector of customs in the United States was required by law, under penalty for non-performance, to ascertain the dutiable value of imported goods by adding to their cost at the place of production the cost of transporting them to the place of shipment to the United States and of the box or case in which they were enclosed. This aggregate was called their price or value " free on board," which, in the absence of fraud, was taken to be their dutiable value. The act of March 3, 1883, 22 Stat. 488, c. 121, § 7, repealed this provision of law. Shortly after this section took effect, and in ignorance of its passage, a shipment of goods produced in Switzerland was made at Antwerp, the consular invoice of which contained in detail the original cost of the goods in Switzerland, the cost of transportation separately stated, and the aggregate " free on board at Antwerp." On their arrival at the port of New York the consignee cabled for a new invoice, to conform to the changed law. One was sent, but without a consular certificate. The consignee presented both invoices at the custom-house and asked to use the second as explanatory of the first, and to enter the goods at their net value, charges off. The weigher's return at the custom-house showed a less quantity of goods than that stated in the invoice. The custom-house officers required the importer to enter the goods at their dutiable value according to the first invoice and gave him to understand that that was all he could do. The collector decided and the Secretary of the Treasury affirmed the decision on appeal, that the cost of transportation, etc., was not to be deducted from the dutiable value of the goods, and that the duties were to be collected on the quantity as shown by the invoice; *Held*,

(1) That the levy of duties after March 3, 1883, on a valuation including the charges of transportation from the place of production to the place of shipment was contrary to law.

(2) That under the circumstances the importer was not bound to ask for an appraisement under Rev. Stat. § 2926.

(3) That the collector was not entitled to exact a duty upon a deficiency in weight arising from loss of goods and not from shrinkage.

(4) That the payment of the duties under these circumstances was n̄·· voluntary.

THIS was an action against a collector of customs to recover duties alleged to have been illegally exacted. Verdict for the plaintiff and judgment on the verdict. The defendant sued out this writ of error. The case is stated in the opinion.

*Mr. Assistant Attorney General Maury* for plaintiff in error.

*Mr. Edward Hartley* and *Mr. Walter H. Coleman* for defendant in error.

*Mr. Edwin B. Smith,* on behalf of parties interested in the question, filed an additional brief by leave of court upon the question when section 7 of c. 121, act of March 3, 1883, 22 Stat. 488, took effect.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This is a suit to recover alleged excess of duties exacted on certain cargoes of asphaltum in cakes, imported by Bradbury, the plaintiff below, from Antwerp, in May, 1883. Two questions are presented in the case for our determination: *First,* whether the 7th section of the act of March 3d, 1883, entitled "An act to reduce internal revenue taxation, and for other purposes," 22 Stat. 488, c. 121, went into effect at the time of the passage of the act, or not until the 4th of July following; *Secondly,* if it did go into effect at the time of the passage of the act, whether, under the circumstances of this case, the plaintiff below was entitled to the benefit of that section.

Prior to the passage of the act referred to under the 2907th and the 2908th sections of the Revised Statutes, (which were taken from the 9th section of the act of July 28th, 1866, 14 Stat. 330, c. 298,) the collector, in determining the "dutiable value" of merchandise, was required to add to the cost, or actual wholesale price or general market value, at the time of exportation, in the principal markets of the country whence the goods were imported, the cost of transportation, shipment and transshipment, with all the expenses included, from the place of growth, production, or manufacture, to the vessel in which shipment was made to the United States; also the value of the

sack, box, or covering, and commissions and brokerage ; which additions were to be regarded as part of the actual value, 'and a penalty was imposed for not including them.    These sections were repealed by the 7th section of the act of March 3d, 1883. They are repealed by words in the present tense, thus: " That sections twenty-nine hundred and seven and twenty-nine hundred and eight   .   .   .   be, and the same are hereby, repealed, and hereafter none of the charges imposed by sa. d sections, or any other provisions of existing law, shall be estimated in ascertaining the value of goods to be imported."    We do not see how there can be any doubt that this repealing section went into immediate effect.    The law itself went into immediate effect, although, it is true, various provisions of it, contained in other sections, were postponed to take effect, some on the first of July and some on the first of May.    But where such postponement was intended it was expressed, and only referred to the parts that were so postponed.    It did not affect the section in question.    And such was the understanding of the Treasury Department itself at the time.    In a Treasury circular of March 12th, 1883, addressed to the collectors of customs, the Secretary, referring to the act in question, then just passed, said : " Various sections recite the date when each shall go into effect, and, so far as concerns these sections, those dates control.    Section 7, however, names specifically no date when it is to go into operation, and the department holds that it takes effect from and after the date of the passage of the act."    This cotemporaneous construction is entitled to some weight in favor of importers.    *United States* v. *Johnston*, 124 U. S. 236, 253.    At all events it was undoubtedly the correct construction.

The question then arises whether the plaintiff below, by anything that took place in the entry of the goods at the customhouse, or by any omission to do what the law required, precluded himself from being entitled to the benefit of this statute.

Under the old law, the cost or value of the goods at the place of production was often merged for convenience with the costs of transportation to the place of shipment and the other charges, and the aggregate was called the price or value "*free*

*on board*" of the vessel in which the goods were shipped to the United States. This price or value, *free on board*, or *f. o. b.*, in the absence of fraud, represented the "dutiable value," subject, of course, to correction by appraisement. When the vessel arrived, and the consignee presented the entry at the custom-house, it was accompanied with the invoice, showing this price or value. In the present case, although the goods were shipped in April, the consignors in Europe, not being aware of the passage of the act of March 3d, 1883, repealing sections 2907 and 2908, made out the invoices in the usual way, stating the price of the goods as free on board at Antwerp, including therein the original cost of the goods at the mines, near Neufchatel, Switzerland, their cost of transportation from Neufchatel to Antwerp, and the other charges required by the repealed sections. This invoice was duly certified by the consul at Mannheim, Germany. Before the entry of the goods, a corrected supplementary invoice had arrived, in answer to a telegram, and was presented at the time of the entry; but it had no consular certificate — that being supplied afterwards. On the trial of the cause, the plaintiff introduced evidence tending to show these facts. He produced the entry, which described the importation as "12,-000 cakes, 300,000 kilometers asphaltum, marks 15,750, $3749," with the usual consignee's oath that the invoice and bill of lading produced with the entry were the true and only ones received, and that the invoice exhibited the actual cost or fair market value at Neufchatel of the goods and all charges thereon. The invoice, certified by the consul, on which the entry was based, was also produced in evidence, representing the goods as "a quantity of asphaltum, 300,000 kilograms, at 52.50 marks per 1000 kilograms, 15,750 marks, free on board — Antwerp." There was attached to this invoice on making the entry, and when produced in evidence, the uncertified, supplementary invoice before referred to, which represented the goods as "a quantity of asphaltum, 300,000 kilograms; value at the mines, 34.50 marks per 1000 kilos., M 10,350. Freight and charge from the mines to Antwerp, free on board, at 18 marks per 1000 kilos., 5400. Free on board Antwerp, marks 15,750."

Attached to the consular invoice was the oath of the owner of the goods, which stated, among other things, that said invoice contained the actual cost and quantity thereof and of all charges thereon. The certificate of the consul attached to said invoice was dated 20th of April, 1883, and certified, among other things; that the invoice, "in which are mentioned and described certain asphaltum, amounting with the charges thereon to the gross sum of, marks, 15,750, was produced to him by the owner," and that the actual market value of the goods (except as corrected by him) was correct and true.

The plaintiff further offered evidence to show that, being charged with duties on the entire amount of 15,750 marks, he protested against the assessment on the ground that the defendant " assessed duty upon the cost of transportation, shipment and transshipment, with all expenses included, from the place of production and manufacture to the vessel in which the shipment was made to the United States, contrary to section 7 of the act of March 3, 1883," claiming " that said charges were not subject of appraisement or duty ;" and on a second ground that the weigher's return showed a less quantity than that on which duty was charged ; and that he paid the excess of duties exacted under compulsion solely for the purpose of obtaining the goods.

An appeal was taken to the Secretary of the Treasury, who affirmed the decision of the collector, on the ground that the deduction for charges had not been made in the entry ; and the action was brought within proper time thereafter.

A. W. Patterson, the plaintiff's custom-house broker, testified that he presented the two invoices above named at the custom-house on the entry of the goods ; that he made the entry for the plaintiff ; that he asked to make the entry on both the consular and supplemental invoices, the latter as explanatory of the former ; that the custom-house officers refused to allow this to be done ; that he asked permission to use the supplemental invoice in connection with the other invoice as explanatory, and enter in the net value, charges off, which was refused ; that he then entered the goods according to the consular invoice ; that the supplemental invoice had come in

answer to a telegram to the Neufchatel Asphaltum Company, to furnish a corrected invoice, showing what the charges were; that subsequently to the entry of the goods a copy of the supplemental invoice was received, properly certified by the consul. (This copy was admitted in evidence.) The weigher's certificate was also produced, showing a deficiency of 2740 pounds of asphaltum in the cargo of the Marshall, and over 9000 pounds in that of the Edith, for which no refund of duty had been made. The witness Patterson further testified as to the meaning of the expression "free on board," as before stated.

Potter, an examiner in the appraisers' department, testified that he passed the entry in question, and endorsed it "correct," which merely meant that the entry was sufficient to cover the market value of the goods. He further testified that he found from memory, and by comparison with other goods in the same markets, that the market value of these goods was 34 marks 50 pfennigs, or 35 marks at the mines, at the place of production. Being asked if he had passed, as a rule, invoices of asphaltum from Mannheim, Germany, for a considerable period before and after that time at the same rate of 34.50, he said that would be impossible to say without the papers, but he presumed that that was about the market value. On cross-examination he stated that he had no recollection as to what he found the market value of this importation to be, independent of what was written upon the entry and invoice. To the question "Have you any recollection at all of what you did, in fact, find the market value in the principal foreign ports to be?" his answer was "Yes; I have that recollection, because it is so stated on the invoice (supplemental); that 34 marks 50 pfennigs per thousand kilograms was about the usual price, and it seems to have been stated there on the invoice." To the further question, "Then, as I understand, the effect of your testimony is that from looking at the supplemental invoice you form the impression that the value at that time at the mines was 34 marks and 50 pfennigs per thousand kilograms?" his answer was "Yes, sir."

Esterbrook, chief liquidating clerk of the custom-house, tes-

tified that, according to the course of business in the custom-house, under the law, the entered value is the value declared upon the entry under oath, and that the practice is, that the collector shall not levy duty on less than the entered value, though the amount in the invoice is less. Another clerk testified to the same effect.

Thereupon, the evidence being closed, the counsel for the government moved that the jury be directed to find for the defendant upon the following grounds: 1, that the evidence does not show the duty exacted on any amount in excess of the invoice value; 2, nor in excess of the entered value; 3, nor does it make out a case of recovery for the plaintiff. The court having denied this motion, the counsel then made a request to charge fourteen separate propositions, the substance of which was that under section 2900 of the Revised Statutes, which declares that "the duty shall not, however, be assessed upon an amount less than the invoice or entered value," the collector was bound to assess the duty on the amount stated in the entry and in the invoice certified by the consul, and could not take notice of the uncertified invoice; and that if the plaintiff desired to have the invoice corrected, his remedy was to demand an appraisement under section 2926 of the Revised Statutes, which provides that merchandise, of which incomplete entry has been made, or an entry without specification of particulars, either for want of the original invoice or for any other cause, or which has received damage during the voyage, shall be conveyed to a warehouse and there remain until the particulars, cost or value, as the case may require, shall have been ascertained, either by the exhibition of the original invoice, or by appraisement, at the option of the owner, importer or consignee, and until the duties shall have been paid or secured to be paid.

The court declined to adopt the propositions of the counsel, but charged the jury that as the invoice certified by the consul purported to show the value of the goods "free on board at Antwerp," if the jury were satisfied by the evidence that this meant that the value so expressed included charges, the charges of transportation and placing on board ship, — charges from

the markets of the country to the ship — then it was not an invoice of the "dutiable value," but was an incomplete invoice; that if this was its character, the importer or consignee had a right to claim that it was incomplete, and to ask that the goods be appraised, or that he might amend his invoice. The charge then proceeded as follows: "You have heard Mr. Patterson testify as to what occurred when he presented this invoice to the entry clerk. . . . Now, if he was given to understand when he presented that invoice there and stated that he wanted to get the charges out in some way, and presented this additional paper — you heard his testimony about what he did — if he was given to understand that he must enter those goods at the value expressed: that is, the value including the charges, the value expressed in the invoices, and in no other way, and that they could not get along in any other way than that, then he was not bound to ask for an appraisement. If they gave him to understand that that was the only thing he could do, if they met him right there when he wanted to put in this additional invoice, and said the only thing you can do is to enter these goods at this value, and the importer was compelled to do it in order to proceed at all, and he yielded to that, then he was not bound to say anything about an appraisement. But if they did not do that, if they merely refused that and gave him a chance to ask for an appraisal if he wanted to, and he did not ask for it, he mistook his remedy, and the plaintiff cannot recover, and it was his fault that he did not enter them right. But if they cut him right off on that subject and said he must enter at this larger value, then it was their fault, and the plaintiff can recover if duties on charges were collected."

The court further charged, that if the examiner, who appraised the goods, appraised their value in the principal markets of the country whence they came, in the shape they were, (that is, in cakes,) at 34 marks 50 pfennigs, that was their dutiable value and the collector exacted a duty in excess for charges, whether he called them charges or not, and the plaintiff should recover what he paid for this duty on charges, because the law of 1883 took out charges as a part of the dutiable value; but

that, if this was not the value that the appraiser took, when he says he did appraise the goods, and the jury cannot tell what it was, then they cannot tell what duty was paid on charges, and the plaintiff has not made out his case.

As to the deficiency in weight, the counsel for the government contended, and asked the court to charge, that the plaintiff was not entitled to recover anything in respect to the difference between the weights stated in the invoices and entries and the weights stated in the official weigher's returns. The court declined so to charge, and instructed the jury that if the deficiency arose from the loss of goods on the passage, a proportionate reduction should be made; but not if it arose from mere shrinkage, and if all the goods that were sent arrived.

The counsel for the government excepted to each part of the charge as given, and to each refusal to charge as requested.

We do not think that the court below committed any error in its instructions or in its refusals.

First. In regard to the construction and effect of the consular invoice which expressed the value of the goods " free on board," it was perfectly proper and right to instruct the jury that if they were satisfied from the evidence that this form of valuation was understood to include charges of transportation from the place of production to the place of shipment, and other charges of shipment and transshipment, then the levy of duties on such valuation, since the passage of the act of 1883, was contrary to law, and that the plaintiff could recover back the duties levied on the amount of such charges, provided he took the proper course to avail himself of the error. This is so evident that it needs no discussion to make it plainer.

Secondly. As to the course which the plaintiff did pursue, we see no error in the position taken by the court, that although the statute prescribed a particular method to be followed under section 2926 of the Revised Statutes, in case of an incomplete entry of goods, or an entry without the specification of particulars, (namely, to convey the goods to a warehouse, there to remain until the particulars, cost or value should be ascertained either by the exhibition of the original

invoice, or by appraisement,) yet if, when the importer or consignee pointed out the imperfection, and desired to correct it, or have it corrected, he was met by a declaration of the officers that he must enter the goods at the value expressed in the invoice and in no other way, and was given to understand that that was the only thing he could do, and he was compelled to do that in order to proceed at all, then he was not bound to ask for an appraisement under the statute. The case was prejudged against him. The theory of the custom- house officers evidently was, that the valuation of the goods in the entry and invoice was binding on the importer, although in that valuation he had inadvertently included charges for transportation, and other charges, exempted from duty by the act of 1883; and that it was his own fault for having so included such charges, and that he was estopped from disputing the valuation thus made and sworn to, even though qualified by the words "free on board," which could have no effect to alter the valuation. It is not stated in these words, but that was the tendency of the evidence; and we think that the jury were properly instructed on the subject.

Thirdly. As to the deficiency in the weight of the goods, as the value was measured by the weight, both in the invoice and by the appraiser, namely — so much per 1000 kilograms, — we think the court was right in telling the jury that any deficiency arising from loss of goods, and not from mere shrinkage, was a proper subject of recovery. If goods are damaged or affected intrinsically, that is a matter for examination and appraisement under section 2927, Revised Statutes, but if any portion of them has never come to hand but has been actually lost, the case would seem to come within the spirit of section 2921, which says that "if, on the opening of any package, a deficiency of any article shall be found on examination by the appraisers, the same shall be certified to the collector in the invoice, and an allowance for the same be made in estimating the duties." The appraiser's certificate in the present case related merely to *pro rata* value, and not to quantity, — that was ascertained and certified by the weigher. If only half of the cargo was found on board the

ship, it could hardly be contended that the importer would be bound by his entry and invoice to pay duty on the entire cargo shipped at Antwerp.

As to the point that the payment of the duties was voluntary on the part of the plaintiff, it is obvious to remark, that the case as already considered involved this very question. The verdict of the jury in favor of the plaintiff, under the instructions given, was virtually a finding of the fact that the plaintiff was compelled to pay the illegal duties in order to get possession of his goods. The counsel for the government says that he ought to have asked for a reappraisal. The question whether he was bound to take that course or not was involved in the inquiry submitted to the jury under the second head of instructions.

We see no error in the record and the judgment is

*Affirmed.*