(Reap. Dec. 8994)

DAN BRECHNER & COMPANY *v.* UNITED STATES

Entry No. 24694-2, etc.

(Decided September 16, 1957)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the defendant.

WILSON, Judge: These are appeals for reappraisement of the value of certain merchandise, consisting of numerous items, including mirrors, chinaware figures, ornaments, mechanical toys, rubber balls, and various toys. The items in question were exported from Japan between May 30, 1948, and August 24, 1948. The record discloses

that the merchandise in question was sold on an f. o. b. Japanese seaport basis during the period when the Japanese Board of Trade, also known as Boeki Cho, and SCAP, the latter being the Supreme Commander of Allied Powers, was in control of all shipments for export from Japan. The f. o. b. prices represent the entered and appraised values of the merchandise. The involved merchandise was entered under so-called duress under the provisions of section 503 (b) of the Tariff Act of 1930, as in force and effect at the time of importation.

Plaintiff, in these appeals, contests the action of the appraiser in including in the appraised values of the merchandise certain items which the plaintiff contends are nondutiable. Counsel for the plaintiff states the basis of the present action as follows:

Mr. Klingaman: * * *

First, there is a 5 per cent buying commission, which the plaintiff pays to an agent in Japan, who acts for the plaintiffs in connection with plaintiffs themselves. * * *

The other items we claim are improperly included in the appraised value are designated on the invoices in substantially the following terms: Inland freight or freight to shipping port; insurance premium from go-down to on-board; hauling and lighterage; sometimes it is lighterage and handling; petties and storage.

The official papers disclose that the appeals in question refer to "certain merchandise, all items on which additions were made on entry to meet advances made by appraiser in similar cases pending an appeal to reappraisement or reappraisement."

Plaintiff called as its only witness Jacob Brechner, partner in the plaintiff concern. Substantially, his testimony was as follows: The witness went to certain manufacturers with his agents, at which time discussions were had relative to the purchase of various commodities in which plaintiff was interested. At such time, these manufacturers offered to make goods for plaintiff at a certain figure. If the amounts agreed upon were favorable, the next question was case and packing cost, and, thereafter, the prices had to be approved by the various associations set up by Boeki Cho. After approval of the prices, all of the contracts covering the involved merchandise were with Boeki Cho, which situation applied to original orders for the first time as well as to repeat orders (R. 17), and all payments were made direct to Boeki Cho (R. 21), which included the full amount of the *per se* price (R. 22). Plaintiff's witness did not personally sign any of these contracts. During the period in question, all purchases were made at the *per se* unit price f. o. b. Yokohama, Kobe, Nagoya, or whatever the port might be, and it appears that this was the only price at which the goods could be purchased. Payment for the merchandise was made by letters of credit, drawn to the order of Boeki Cho in United States dollars, and no payment was made directly to any manufacturer

for any of the merchandise involved in these cases. Plaintiff's witness further testified with respect to the involved merchandise as follows:

X Q. You couldn't buy it at the factory for less and walk out with it?—A. No.

X Q. You had to pay at the factory if you decided to take it there at the f. o. b. Yokohama price?—A. The price approved by Boeki Cho.

X Q. That would be the price you would pick up the merchandise at any manufacturer's plant?—A. Exactly.

With respect to the amounts claimed to be paid as commissions, Mr. Brechner testified that he paid certain percentages, based on the purchase price, "so-called," to agents for work performed in the purchase and handling of the involved merchandise, which the witness stated were included in the f. o. b. prices. However, the invoices covering the goods in question do not reflect any items of commission, and plaintiff's witness agreed that the agents got paid "in some form" by the Japanese Board of Trade (R. 17).

Plaintiff, in support of the involved appeals, relies upon the case of *Robertson* v. *Bradbury*, 132 U. S. 491, as authority for deducting certain charges, including those which the plaintiff here claims are nondutiable items. As stated by this court in the case of *Dan Brechner & Co. et al.* v. *United States*, 39 Cust. Ct. 607, Reap. Dec. 8949, decided July 25, 1957 (application for review now pending), there is no reason for disagreement with the construction which the Supreme Court, in the *Robertson* case, *supra*, placed upon the provisions of the statute, as it existed at the time of exportation of the merchandise there involved. However, the present statute differs with the law, as it existed in the cited case, and, furthermore, the facts in the cases now under consideration are clearly distinguishable from the facts in the *Robertson* case. In the cited case, the evidence disclosed that the involved goods were produced at certain mines located near Neufchatel, Switzerland, and were shipped from that point to Antwerp for exportation; that the merchandise therein consisted of "a quantity of asphaltum, 300,000 kilograms; value at the mines, 34.50 marks per 1000 kilos, M 10,350. Freight and charge from the mines to Antwerp, free on board, at 18 marks per 1000 kilos, 5400. Free on board Antwerp, marks 15,750." In the *Robertson* case, *supra*, it appeared that the certified invoice on which entry was based was made out before the exporting sellers knew of the repeal of the law, requiring the inclusion of inland freight charges for duty purposes, and, as a consequence, included in the value of the goods charges of transportation from the place of production to the place of shipment. The Court held that the levy of duties upon a valuation which included such charges was, since the passage of the act of 1883, contrary to law. In the cases at bar, however, the involved merchandise was only sold f. o. b. Japanese seaport, and the evidence does not show that such or similar merchandise was freely offered for sale to all purchasers at the appraised unit values, less the

amount of the alleged charges, whether such charges were included in the *per se* unit price or added thereto. Accordingly, the factual situation here differs from that which appeared in the *Robertson* case, *supra*, and the latter case is not controlling in our present determination.

In my opinion, disposition of these appeals is controlled by the holding of our appellate court in *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553. The court therein held that where a quantity of china ornaments, appraised on the basis of export value, which, concededly, was proper, was freely offered for sale to all purchasers in the principal market of the country of exportation, at time of exportation, at a single price, i. e., f. o. b. port of exportation, which price included therein an item of inland freight cost to said port, and no sales or offers for sale were ever made on an at-factory basis for delivery in the principal market, then, under such circumstances, inland freight charges were correctly included in computing statutory export value. The merchandise there in question was invoiced at various unit prices, the total invoice price including a sum for inland freight between Selb-Stadt, Germany, the principal market, and Bremen, the port of embarkation. In holding that the inland freight costs between the stated points were dutiable items, in computing statutory export value, the court, in the *Straub* case, *supra*, page 211, stated:

It is entirely clear from the terms of the stipulation that all sales or offers for sale were made at Selb-Stadt, the factory and principal market, on an f. o. b. Bremen basis. It is equally clear that no sales or offers for sale were ever made on an ex factory basis so that the freely offered price for such or similar merchandise in the principal market was the f. o. b. Bremen price and that price only. In other words, all sales or offers for sale were made for delivery at the port of exportation and no sales or offers for sale were made for delivery in Selb-Stadt. Availability of the merchandise to all purchasers was thus predicated on a single price and that price included freight costs between Selb-Stadt and the port of exportation, Bremen.

In the appeals at bar, as was the situation in the *Straub* case, *supra*, the record establishes that the freely offered price to the plaintiff herein and to other purchasers for the merchandise was on an f. o. b. Yokohama, or other seaport, basis. Specifically, there is nothing in this record to show that, during the period here involved, the goods could be, or, in fact, were ever purchased at the invoice price, less freight and other charges. As was stated by our appellate court in the *Straub* case, *supra*, at page 215, in adopting the contention of the appellant therein:

* * * "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment*, and does *not accrue subsequent to the time of shipment* to the United States." [Italics quoted.]

No principal market has been established by the plaintiff herein for any of the involved articles. The statement of plaintiff's witness that Tokyo, where it was alleged the goods were purchased at prices agreed upon between seller and buyer, subject to approval or modification by Boeki Cho, was the principal market for the involved items, is not supported by any probative proof of record.

Respecting the items of commission claimed to have been paid by the plaintiff to certain agents as buying commissions, the invoices covering the merchandise herein do not show any charges for commission either included within or added to the *per se* prices for the goods. Further, there is no proof of actual payment of commissions allegedly paid. As a matter of fact, the names of these alleged agents do not appear in any of the papers on file with the court. All orders had to be placed with Boeki Cho, and payment for the goods was made to it.

It is not incumbent upon the Government to prove that the appraised values were proper, until or unless the importer had shown the appraisements to be erroneous and has established different values. *Kenneth Kittleson* v. *United States*, 40 C. C. P. A. (Customs) 85, 89, C. A. D. 502. The plaintiff, in this case, has failed to establish values for the involved items other than those at which appraised.

Upon the entire record before me, I find as facts:

1. That the involved merchandise consists of mirrors and numerous other items, exported from Japan between May 30, 1948, and August 24, 1948, by Boeki Cho, a Japanese Government agency, which was in control of all exports of merchandise from Japan.

2. That said merchandise was sold on an f. o. b. Japanese seaport basis, the unit price per article and total invoice price in each case having included therein certain alleged freight and other charges.

3. That such and similar merchandise was not freely offered for sale to any American purchaser during the involved period on an ex-factory basis.

4. That there is no evidence of record that such or similar merchandise was, or was not, freely offered for sale for home consumption in Japan.

5. That there is no probative evidence of record of a usual wholesale quantity or of the principal market for such or similar merchandise during the involved period.

I conclude as a matter of law:

1. The plaintiff herein has failed to establish any price for such or similar merchandise during the period involved at prices f. o. b. Japanese seaport, less any proven charges.

2. The plaintiff has failed to establish a price for such or similar merchandise during the involved period at ex-factory prices.

3. The presumption of correctness attaching to the appraised values has not been overcome.

4. The proper values for the involved merchandise are the values found by the appraiser.

Judgment will issue accordingly.