JULY 26, 1957

A. R. D. 80.——————————————————————*Dominick Butti* v. *United States.*  Entered at New York, N. Y.  A. R. D. 73.  Motion by appellee.

(A. R. D. 81)

UNITED STATES *v.* ALBERT MOTTOLA, AN INDIVIDUAL DOING BUSINESS UNDER THE NAME AND STYLE OF ATLAS SHIPPING CO.

Entry No. 796706, etc.

## Second Division, Appellate Term

(Decided November 25, 1957)

*George Cochran Doub*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the appellee.

Before LAWRENCE, RAO, and FORD, Judges

FORD, Judge: This application for review was filed under the provisions of title 28 U. S. C., section 2636 (a), and seeks a reversal of the decision and judgment of the trial court, reported in 38 Cust. Ct. 583, Reap. Dec. 8738.

The only question presented for decision in this application for review, as was the question before the trial court, is whether or not certain inland freight and other charges are to be included as a part of the dutiable value of the merchandise. In order that we may have a clear understanding of the views of the trial court, and the reasoning upon which it arrived at its conclusion, we quote the following from its decision:

* * * The actual facts in the case seemingly bring it within the ruling of our appellate court in the case of *United States* v. *Paul A. Straub & Co., Inc.*, 41 C. C. P. A. (Customs) 209, C. A. D. 553.

Plaintiff, however, now moves to an attack on the legal basis for the ruling in the *Straub* case, contending that the statute (sec. 402 (d), *supra*) contemplates only a value for merchandise *in the principal market of the country of exportation*, and that, where goods are offered and sold in the principal market but delivered in a place other than the principal market, any costs, charges, or expenses arising out of the bringing of the goods from the principal market to the place of delivery form no part of the value for duty purposes.

Chief reliance is placed by plaintiff on the case of *Robertson* v. *Bradbury*, 132 U. S. 491, 33 L. ed. 405. That case arose under the Act of March 3, 1883, section 7 of which specifically repealed portions of sections 2907 and 2908 of the Revised Statutes. In the words of Mr. Justice Bradley, who delivered the opinion of the Court, the situation was as follows:

Prior to the passage of the Act [of 1883] referred to, under the 2907th and 2908th sections of the Revised Statutes (which were taken from the 9th section of the Act of July 28th, 1886, 14 Stat. 330), the collector, in determining the "dutiable value" of merchandise, was required to add to the cost, or actual wholesale price or general market value, at the time of exportation, in the principal markets of the country whence the goods were imported, the cost of transportation, shipment, and transshipment, with all the expenses included, from the place of growth, production or manufacture to the vessel in which shipment was made to the United States; also the value of the sack, box or covering, and commissions and brokerage; which additions were to be regarded as part of the actual value, and a penalty was imposed for not including them. These sections were repealed by the 7th section of the Act of March 3d, 1883. They are repealed by words in the present tense, thus: "That sections 2907 and 2908 * * * be, and the same are hereby, repealed, and hereafter none of the charges imposed by said sections, or any other provisions of existing law, shall be estimated in ascertaining the value of goods to be imported." * * *

Thus it will be seen that, for some years prior to the passage of the Tariff Act of 1883, the cost of transportation from the principal markets to the port of exportation abroad was by statute included as part of the value upon which duty was to be taken. The Act of 1883 repealed that part of the statutes so providing, making the value of the goods *when located in the principal market* the basis of value and specifically prohibiting the addition to the value of the goods for duty purposes of such charges as transportation from the principal market to the port of exportation.

Continuing the statement by Mr. Justice Bradley:

Under the old law [i. e., sections 2907 and 2908 of the Revised Statutes, as they existed prior to March 3, 1883], the cost or value of the goods at the place of production was often merged for convenience with the costs of transportation to the place of shipment and the other charges, and the aggregate was called the price or value *"free on board"* of the vessel in which the goods were shipped to the United States. This price or value, *free on board* or *f. o. b.*, in the absence of fraud, represented the "dutiable value," subject, of course, to correction by appraisement. When the vessel arrived, and the consignee presented the entry at the customhouse, it was accompanied with the invoice, showing this price or value. In the present case, although the goods were shipped in April, the consignors in Europe, not being aware of the passage of the Act of March 3d, 1883, repealing sections 2907 and 2908, made out the invoices in the usual way, stating the price of the goods as free on board at Antwerp, including therein the original cost of the goods at the mines, near Neufchatel, Switzerland, their cost of transportation from Neufchatel to Antwerp, and the other charges required by the repealed sections. This invoice was duly certified by the consul at Manheim, Germany. [Italics quoted.]

Evidence was offered showing the cost of the involved merchandise at the mines and the amount of the charges added for transportation from the mines to Antwerp. The Court held:

First. In regard to the construction and effect of the consular invoice which expressed the value of the goods "free on board," it was perfectly proper and right to instruct the jury that if they were satisfied from the evidence that this form of valuation was understood to include charges of transportation from the place of production to the place of shipment, and other charges of shipment and transshipment, *then the levy of duties on such valuation, since the passage of the Act of 1883, was contrary to law;* and that the plaintiff could recover back the duties levied on the amount of such charges, provided he took the proper course to avail himself of the error. This is so evident that it needs no discussion to make it plainer. [Italics added.]

The principle of the foregoing decision was for many years consistently followed by the Treasury Department, even in cases of entries where the "inland" charges had not been separately stated on the invoices, and collectors were directed to refund duties collected on the basis of values including f. o. b. charges where the principal market was other than the port of exportation. Note Synopses of Decisions Nos. 9790, 9867, 9934, 9937, 12,872, and 13,184.

Section 29 of the Act of June 10, 1890, repealed *in toto* sections 2907 and 2908 of the Revised Statutes. Section 19 of the 1890 act was the valuation portion of that statute and provided, so far as pertinent, as follows:

Sec. 19. That wherever imported merchandise is subject to an ad valorem rate of duty, or to a duty based upon or regulated in any manner by the value

thereof, the duty shall be assessed upon the actual market value or wholesale price of such merchandise as bought and sold in usual wholesale quantities, at the time of exportation to the United States, in the principal markets of the country from whence imported, and in the condition in which such merchandise is there bought and sold for exportation to the United States, or consigned to the United States for sale, including the value of all cartons, cases, crates, boxes, sacks and coverings of any kind, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, * * *.

In an early decision rendered under the 1890 act, in the case of *Meyer, Wilson & Co. v. United States*, G. A. 120, T. D. 10470, the late Judge Somerville of this court construed the foregoing language to have the same effect as was given the language of the 1883 act by the Supreme Court. He said:

By *inland charges* of this kind we understand charges from an inland place or market to the port of exportation in the same country, or else like charges from the market where the goods are purchased or consigned to any port of exportation on the seaboard, whether in or out of the country whence originally shipped or consigned. Such charges are abolished by the act of June 10, 1890, and no longer form a part of the dutiable value of merchandise. [Italics quoted.]

The principle that the value called for by the statute was the value of the goods *as laid down or located in the principal markets of the country of exportation*, including all costs, charges, and expenses necessary to placing the merchandise in condition, packed ready for shipment to the United States, but excluding all costs, charges, and expenses which accrued after the merchandise reached that condition in the principal markets, was, from and after the decision in the *Robertson v. Bradbury* case, well established.

\*       \*       \*       \*       \*       \*

There can be no question but that it is the purpose of valuation statutes to permit the finding of a value for imported merchandise at a certain time, in a certain *place*, and in a certain condition. The time fixed by the existing statutes is at the time of exportation of the merchandise under appraisement, the *place* fixed is in the principal markets of the country of exportation, and the condition fixed is packed, ready for shipment to the United States. Since 1883, the *place* at which the value of merchandise is to be determined has always been in the principal markets of the country of exportation. See section 9, Act of March 3, 1883; section 19, Act of June 10, 1890; section 18, Tariff Act of 1909; section III, paragraph R, Tariff Act of 1913; section 302, Act of May 27, 1921; section 402, Tariff Act of 1922; and section 402, Tariff Act of 1930.

A market is a place where merchandise is freely offered for sale, as distinguished from a place where it is manufactured or delivered. See the decision of the late Judge Ekwall of this court in *Mary G. Ricks et al. v. United States*, 29 Cust. Ct. 517, Reap. Dec. 8187, wherein he cited the applicable cases on the subject. By extension, then, principal markets must be the main, leading, or chief places where merchandise is freely offered for sale, as distinguished from those places where it is manufactured or delivered.

\*       \*       \*       \*       \*       \*       \*

It is argued by the defendant that the inland freight in this case did not accrue *after* the goods were sold, but accrued *in* the principal market at the time the goods were sold, and is "incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item."

The record herein, however, does not support these contentions. It clearly shows that the f. o. b. port of exportation prices were quoted, not as an integral part of the "cost to the seller of material and labor," but merely for the convenience of the purchaser, so that he would have only one definite price to pay and one payee. The purchaser knew he was paying for freight *as* freight, and not as a part of the *per se* value of the goods. There is nothing in the record to show that the price of the merchandise laid down in Tokyo, the principal market, would be the same as it was free on board in Yokohama, nor is such a fact implicit in the facts of the case. That is the very material difference between the situation in the case at bar and that which obtained in the *Heffernan, Traders Paper Co.* and *Zellerbach* cases. In those cases, it *affirmatively* appeared that, even when the goods were delivered in the principal market, the same price applied as when delivered to any point in Germany, including the ports of exportation.

Moreover, even if it may be said that, in a sense, the f. o. b. charges accrued in the principal market because they were part of the price at which the merchandise was sold, nevertheless, not *all* charges which accrue in the principal market are, by statute, made part of the value of the merchandise. The statute provides for the inclusion of only those charges which accrue *up to the time that the merchandise is in the principal market in the condition of packed, ready for shipment to the United States,* and charges which accrue after that condition has been reached are not includable, whether or not those charges accrue while the merchandise is in the principal market. *United States* v. *International Commercial Co., Inc., and Armour & Co.,* 28 Cust. Ct. 629, 636, Reap. Dec. 8112.

Nor does the fact that the merchandise was not sold for delivery in the principal market, but only f. o. b. port of exportation, alter the situation. As has been said, *the statute does not require that merchandise be delivered in the principal market, but only that it be offered for sale there.* At the same time, the statute both as written and as judicially interpreted calls for the price of the merchandise laid down, i. e., packed, ready for shipment to the United States, in the principal market. It is no more incompatible with ordinary and usual practice to deduct the f. o. b. port of exportation charges to get back to the price in the principal market than it is to deduct c. i. f. charges to get back to the price of the merchandise in the foreign market. In each case, the effort is to arrive at the price called for by the statute, i. e., the price of the merchandise as packed, ready for shipment to the United States, in the principal market.

*　　　*　　　*　　　*　　　*　　　*　　　*

To sum up, it is the opinion of the writer that, where merchandise is freely offered for sale in the principal markets of the country of exportation within the terms of the valuation statute at a price which includes delivery costs elsewhere than in the principal markets, and is not offered for sale for delivery in the principal markets, conformity with the statute as written and long-standing judicial and administrative interpretation thereof requires that such delivery costs be held to form no part of the value of the merchandise.

This view is, of course, contrary to the ruling of our appellate court in the *Straub* case, and the writer offers the hereinbefore stated reasons and cited authorities as the basis for his failure to follow the authority of the *Straub* case.

Counsel for the appellant states, in its brief filed herein, as follows:

The trial court herein relies upon the decision in the *Robertson* v. *Bradbury* case. That case was decided on December 16, 1889. In the light of the statute as it existed at the time of exportation of the merchandise in that case, we agree with the construction there applied.

*　　　*　　　*　　　*　　　*　　　*　　　*

Subsequent to the decision in the *Robertson* v. *Bradbury* case, decided December 16, 1889, the Tariff Acts of 1922 and 1930 were adopted by Congress, thereby, in effect, rendering the said decision ineffectual, as the new provisions included in the valuation sections, Section 402 (b) and (c) of the Tariff Act of 1922, and Sections 402 (c) and (d) of the Tariff Act of 1930, respectively, a foreign value and an export value, which again provided for the *inclusion* of the cost of all containers and coverings of whatever nature, and all other costs, charges and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, as a part thereof.

This record contains no suggestion of a complaint by any one regarding the inclusion of the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, as a part of the dutiable value of this merchandise. It is as to the costs, charges, and expenses, other than for containers and coverings of whatever nature, and except all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, that complaint is here registered. When this merchandise was purchased in Tokyo, the principal market, and before it was shipped, it was in containers and coverings, and it was in a condition, packed ready for shipment to the United States, as held by the trial court. It would, therefore, appear that the inclusion of the freight and other handling charges as a part of the value of this merchandise from the principal market to the port of exportation were unauthorized items of expense and should not have been added to and included as a part of the dutiable value of the merchandise, unless, as stated by counsel for appellant, the Congress, in the Tariff Acts of 1922 and 1930, rendered the decision in the *Bradbury* case ineffectual. Viewed as an initial proposition, we could not agree to this contention.

We find nothing in the language of section 402 of the Tariff Acts of 1922 or 1930 which indicates that the Congress intended to again include as a part of the dutiable value of imported merchandise the cost of transportation, shipment, and transshipment, with all the expenses included, from the place of growth, production, or manufacture to the vessel in which shipment was made to the United States. It is scarcely reasonable to assume that after the Congress had repealed such specific language regarding the inclusion as a part of the value of imported merchandise as the cost of transportation, shipment, transshipment, with all the expenses included, from the place of growth, production, or manufacture to the vessel in which shipment was made to the United States, and also the value of the sack, box, or covering, and commissions and brokerage, that it intended to restore these charges or any part of them by the rather general language employed in said section 402 of the Tariff Acts of 1922 and 1930.

Under sections 2907 and 2908 of the Revised Statutes, in effect prior to the act of 1883, in addition to the other charges and expenses which were required to be included as a part of the dutiable value of imported merchandise, the collector was also required to include as a part of said dutiable value "commissions and brokerage." So far as we have been able to ascertain, since the act of 1883, only commissions other than *bona fide* buying commissions have been added as a part of the dutiable value, and our research fails to disclose any case in which "brokerage" has been added and included as a part of the dutiable value of imported merchandise.

If, as contended by counsel for the appellant, the Tariff Acts of 1922 and 1930, section 402, required that inland freight and other handling charges from the principal market to the port of exportation be added as a part of the dutiable value of merchandise, no sound reason appears why said section 402 would not also require that all commissions and brokerage be included as a part of the dutiable value of imported merchandise.

Counsel for appellant, in its brief filed herein, calls attention to the fact that a petition for a writ of certiorari in the *Straub* case, *supra*, was denied by the Supreme Court on October 14, 1954, and that, in that petition, counsel for the importer cited, as supporting its writ, the case of *Robertson* v. *Bradbury*, *supra*. Counsel then makes the following statement:

Accordingly, it must be inferred that the earlier decision in the *Robertson* v. *Bradbury* case, *supra*, was considered by the Supreme Court in its denial of the writ in the *Straub* case, *supra*, and also by the U. S. Court of Customs & Patent Appeals.

We agree with the above statement by counsel for appellant, but the fact that the *Robertson* v. *Bradbury* case was cited in the petition for a writ in the *Straub* case carries no implication that the Supreme Court manifested an intent to supersede the views expressed in the former case.

* * * The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times. [*United States* v. *Carver*, 260 U. S. 482.]

* * * A denial simply means that as a matter of "sound judicial discretion" fewer than four members of the Court deemed it desirable to review a decision of a lower court. [*Agoston* v. *Pennsylvania*, 340 U. S. 844.]

In the decision of the *Straub* case, *supra*, the case of *Robertson* v. *Bradbury*, *supra*, was not cited or mentioned, but this is not to suggest that the decision in the *Bradbury* case was not given proper consideration by our appellate court. The decision in the said *Straub* case is concluded with the following paragraph:

In the case before us it is a fact that the freely offered price to all purchasers for the merchandise was on an f. o. b. Bremen basis. There is no showing that the

goods could be purchased at the invoice price less freight. The unit prices for the merchandise in the instant case included the inland freight charges at the time of purchase in Selb-Stadt, and as the appellant states "Such inland freight is incorporated in and bound up with the cost to the seller of material and labor, and forms an integral part of the unit value and purchase price of each item. It is inseparable therefrom and is a charge *in* the principal market *at or prior to the time of shipment*, and does *not accrue subsequent to the time of shipment* to the United States."

In the *Robertson* case, *supra*, it was said:

* * * the cost or value of the goods at the place of production was often merged for convenience with the costs of transportation to the place of shipment and the other charges, and the aggregate was called the price or value *"free on board"* of the vessel in which the goods were shipped to the United States. * * * In the present case, although the goods were shipped in April, the consignors in Europe * * * made out the invoices in the usual way, stating the price of the goods as free on board at Antwerp, including therein the original cost of the goods at the mines, near Neufchatel, Switzerland, their cost of transportation from Neufchatel to Antwerp, and the other charges required by the repealed sections.

At this point, it should be observed that, in the *Robertson* case, *supra*, although the shipper in Europe "made out the invoices in the usual way, stating the price of the goods as free on board at Antwerp, including therein the original cost of the goods at the mines, near Neufchatel, Switzerland, their cost of transportation from Neufchatel to Antwerp, and the other charges required by the repealed sections," the Supreme Court, in the *Robertson* case, *supra*, did not find that the inland freight and other charges were incorporated in and bound up with the cost to the seller of material and labor, and formed an integral part of the unit value and purchase price of each item, or that such charges were inseparable from the *per se* unit price of the merchandise. On the other hand, the Supreme Court stated:

First. In regard to the construction and effect of the consular invoice which expressed the value of the goods "free on board," it was perfectly proper and right to instruct the jury that if they were satisfied from the evidence that this form of valuation was understood to include charges of transportation from the place of production to the place of shipment, and other charges of shipment and transshipment, then the levy of duties on such valuation, since the passage of the Act of 1883, was contrary to law, and that the plaintiff could recover back the duties levied on the amount of such charges, provided he took the proper course to avail himself of the error. This is so evident that it needs no discussion to make it plainer.

While counsel for appellee relies primarily upon the *Robertson* v. *Bradbury* case, *supra*, as supporting its contention, it also cites, among others, the case of *Hutton* v. *Schell*, 12 Fed. Cases 1095, from which the following is quoted:

It is, undoubtedly, true, that the action of the treasury department has not been uniform upon this subject. It appears that, in some cases, both coastwise and inland freights have, by order of the treasury department, been added, to make dutiable value. The courts, however, as soon as the question was brought before

them, decided that coastwise freight was not dutiable; and I think that the correctness of that decision has never been questioned, except upon this trial, and has been invariably acquiesced in by the treasury department. * * *

But, it is claimed that there is a difference between inland freight and water freight. No reason has been assigned for any such distinction, and I cannot conceive of any. It must be purely arbitrary.

In the case of *Hutton* v. *Schell, supra,* it was held that there was no distinction between inland freight and water, or ocean freight, and that any such claimed distinction was purely arbitrary. It has been held in the *Straub* case, *supra,* that because the exporter included the inland freight and other charges from the principal market to the port of exportation and required the same to be paid before delivery of the merchandise, that these charges formed a part of the dutiable value of the merchandise. This being true, it logically follows that if and when the exporter elects to add the ocean freight, or water freight, as he did the inland freight and other charges, in this case, that the ocean freight will then have to be added as a part of the dutiable value of imported merchandise. That the Congress ever intended to clothe the foreign exporter with the authority and power to thus control the dutiable value of imported merchandise is a question that is open to serious doubt.

We are not able to discover any material difference between the facts and the law involved in the *Straub* case, *supra,* and the facts and the law involved in the instant case. In the *Straub* case, *supra,* the Court of Customs and Patent Appeals had called to its attention the decision in the case of *Robertson* v. *Bradbury, supra,* and, in the light of the holding by the Supreme Court in the latter case, held the inland freight and other charges there involved to be a part of the dutiable value of the merchandise. We, therefore, follow the decision of the appellate court in the said *Straub* case and hold the inland freight and other contested charges in this case to be a part of the value of the subject merchandise.

Upon a full consideration of this record, we hold as facts:

1. That the subject merchandise consists of badminton rackets imported from Japan between December 16, 1950, and January 4, 1955.

2. That Tokyo, Japan, was the principal and only market in Japan for the offer and sale of such merchandise, and that Yokohama, Japan, was not a principal market for the offer and sale of such merchandise.

3. That at or about the dates of exportation of the subject merchandise such merchandise was freely offered for sale to all purchasers in the principal market of Japan in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States only at prices including delivery f. o. b. Yokohama, or c. i. f.

American seaport, and was not offered for sale for delivery in the principal market.

4. That the prices, at or about the dates of exportation of the subject merchandise, at which such merchandise was freely offered for sale to all purchasers in the principal market of Japan, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States, were the appraised values.

5. That if such or similar merchandise was offered for sale for home consumption the price was no higher.

We, therefore, conclude as matter of law:

1. That the proper basis of value for the merchandise covered by the instant appeals is export value, as defined in section 402 (d) of the Tariff Act of 1930.

2. That such export value is, in each case, as set forth in finding of fact No. 4 above.

Judgment will be rendered reversing the decision and judgment of the trial court accordingly.