Edrick **JENKINS**

v.

**Warden Burl CAIN.**

**Civil Action No. 97–1062.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

July 7, 1997.

---

Edrick Jenkins, Angola, LA, pro se.

## RULING

LITTLE, Chief Judge.

We adopt the conclusion reached by the magistrate in his unopposed report and recommendation, but supplement the magistrate's analysis to incorporate the subsequently issued opinion of the United States Supreme Court in *Lindh v. Murphy,* —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997) (Souter, J., delivered the 5–4 opinion of the Court). In *Lindh,* the Supreme Court held that new provisions of the Antiterrorism and Effective Death Penalty Act of 1996, title 28, chapter 153, apply only to cases filed after the Act became effective on 24 April 1996.

The question presented is whether the one-year limitation period established in 28 U.S.C. § 2244(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA" or the "Act") applies to a habeas petition filed within one year after enactment of the Act. Finding that the AEDPA limitation period applies and has expired, we dismiss Jenkins' petition.

## I. *Factual and Procedural Background*

The facts underlying Jenkins' habeas petition are ably reported in the magistrate's report and recommendation. Jenkins is an inmate at the Louisiana State Penitentiary at Angola. He was convicted in 1985 of armed robbery and aggravated burglary and sentenced to consecutive fifteen and forty-five year terms of imprisonment. Jenkins' petition states that he filed a direct appeal from his conviction which was denied at all state levels, including the Louisiana Supreme Court in 1987. He also states that he filed a state application for post-conviction relief which was denied at all state court levels, including the Louisiana Supreme Court in 1995.

Jenkins challenges his state court conviction on the grounds that his due process was violated: (1) by the means in which the state obtained testimony of a co-defendant to secure Jenkins' conviction; and (2) by the state's suppression of evidence favorable to Jenkins. Jenkins' petition was received by the Clerk of Court on 24 April 1997, exactly one year to the day after 28 U.S.C. § 2244 was amended through enactment of the AEDPA to mandate a one-year limitation period for habeas petitions.[1]

## II. *Antiterrorism and Effective Death Penalty Act of 1996 Bars Petition*

The AEDPA amended 28 U.S.C. § 2244 to provide as follows:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

---

**1.** It makes no difference in our conclusion that Jenkins' petition was filed precisely one year after the AEDPA was enacted, but that a one-year period of limitation that began on 24 April 1996 technically would expire on 23 April 1997.

28 U.S.C. § 2244(d). Prior to enactment of the AEDPA, prisoner habeas petitions were not bound by a period of limitations. Rule 9(a) of the Rules Governing Section 2254 Cases in the United States District Courts established an amorphous standard linked to prejudice to the state. A prisoner could wait a decade without transgressing Rule 9(a). *See Lonchar v. Thomas*, 517 U.S. 884, 116 S.Ct. 1293, 134 L.Ed.2d 440 (1996).

The question is whether the new one-year limitation period of § 2244(d) or the former flexible standard should apply to Jenkins' petition.

### A. *Retroactivity*

Absent a clear direction by Congress to the contrary, a statute takes effect on the date of its enactment. *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846, 112 L.Ed.2d 919 (1991), citing *Robertson v. Bradbury*, 132 U.S. 491, 10 S.Ct. 158, 33 L.Ed. 405 (1889). There is no dispute that the AEDPA was enacted at the time Jenkins filed his petition with this court. That does not end our analysis, however, because Jenkins' petition relates to matters that occurred before enactment.

Whether a new law should apply to acts committed before enactment of the law was clarified by the United States Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Court recognized the tension between two axioms. The first axiom is that "a court is to apply the law in effect at the time it renders its decision." *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The second axiom is that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988).

To relieve the strain, the Court in *Landgraf* set forth a two-part test to determine whether retroactive application of a law is permissible. First, we must determine whether Congress has clearly expressed an intent that the statute be applied retroactively. *Landgraf*, 511 U.S. at 280, 114 S.Ct. at 1505, 128 L.Ed.2d at 262. If Congress has clearly expressed an intention that a statute be applied retroactively, then the statute should be applied in accordance with that intent. *Id.* If Congress has not clearly expressed its intention, then we move to the second level of analysis, "whether the new statute would have a retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the new statute would have a retroactive effect, then it does not govern.

#### 1. *Congressional Intent*

Inspecting § 2244(d) and the non-capital reforms of chapter 153 of the AEDPA under the first step of the *Landgraf* analysis, we initially find no express legislative command concerning the applicability of § 2244(d) to petitions filed subsequent to the date of enactment but relating to matters occurring prior to the date of enactment. In contrast, Congress, in another section of the same Act, explicitly set an effective date for the amendments to habeas procedures in capital cases. The capital reforms are effective against "cases pending on or after the date of enactment of this Act." AEDPA § 107(c), 110 Stat. 1226.

Grappling with this muddled distinction in congressional intent, the Supreme Court recently determined that the AEDPA amendments to chapter 153, including § 2244, do not apply to petitions *pending* at enactment. *Lindh*, —— U.S. at ——, 117 S.Ct. at 2063. The Court went no further in its *Landgraf* analysis than the first step. The Court held that through the negative implication of § 107(c) of the AEDPA, which applies to cases pending on or after the date of enactment, Congress did not intend for chapter 153 to apply to cases pending at enactment.[2] *Id.*

---

**2.** The Supreme Court was not very impressed with the coherence of the AEDPA. "In a world of silk purses and pigs' ears, the Act is not a silk purse of the art of statutory drafting." *Lindh*, —— U.S. at ——, 117 S.Ct. at 2068.

Although not specifically addressing the question of whether § 2244(d) applies to petitions filed *after* enactment of the AEDPA, the Court interpreted chapter 153, which includes § 2244(d), "to apply to the general run of habeas cases only when those cases had been filed after the date of the Act." *Id.* The Court, in other words, did not find that a "grace period" was required before the harsh limits of the AEDPA went into effect.

It is difficult to evade the language in *Lindh* that chapter 153 applies to "cases filed after the Act became effective." *Id.* at ——, 117 S.Ct. at 2068. Two Courts of Appeals previously held that a grace period was required before § 2244(d) went into effect. *Lindh v. Murphy*, 96 F.3d 856, 866 (7th Cir.1996) ("reliance interests lead us to conclude that no collateral attack filed by April 23, 1997, may be dismissed under § 2244(d)."), *rev'd, Lindh v. Murphy*, —— U.S. ——, 117 S.Ct. 2059, 138 L.Ed.2d 481, *Peterson v. Demskie*, 107 F.3d 92, 93 (2nd Cir.1997) (finding that a "reasonable time," in this case seventy-two days, was permitted prisoners to file petitions before § 2244(d) applied). Those holdings are no longer reliable in light of *Lindh*.

As we find below in the second step of *Landgraf* analysis that § 2244(d) does not have a retroactive effect, our conclusion as to the first step is academic. We suspect, however, that the Supreme Court in *Lindh* closed the § 2244(d) door on petitions filed after the enactment of the AEDPA.

### 2. *Retroactive Effect*

The second step of the *Landgraf* analysis requires the court to determine whether under these circumstances application of § 2244(d) would have "retroactive effect." The Supreme Court in *Landgraf* held:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation omitted] or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its en-

actment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound ... instinct[s]," [citation omitted] and familiar considerations of fair notice, reasonable reliance, and settled expectations offer sound guidance.

511 U.S. at 269–70, 114 S.Ct. at 1499, 128 L.Ed.2d at 254–55.

Instructed by recent Fifth Circuit guidance on the subject of retroactivity, we find that § 2244(d) does not have "retroactive effect," so may be applied against Jenkins' petition. In *St. Louis v. Texas Worker's Compensation Comm'n*, 65 F.3d 43, 46 (5th Cir.1995), the Fifth Circuit held that a change in the statute of limitations for filing Age Discrimination in Employment Act ("ADEA") claims did not have a retroactive effect. "It governs the secondary conduct of filing suit, not the primary conduct of the defendants. Nor does the statute of limitations alter either party's liability or impose new duties with respect to transactions already completed." 65 F.3d at 46. In *Adepegba v. Hammons*, 103 F.3d 383, 386 (5th Cir.1996), the Fifth Circuit reiterated that procedural changes, even where they work to the disadvantage of defendants in pending cases, do not have a retroactive effect. 103 F.3d at 386 (holding that changes in fee collection procedures from *in forma pauperis* parties did not constitute retroactive effect).

Jenkins' federal habeas petition is, at best, secondary conduct.[3] It is not the actual criminal conduct prohibited by law, nor is it the proceeding to determine whether the defendant in fact committed such conduct. Rather, it is a collateral proceeding that, in effect, attacks the judgment of a prior state proceeding. In that § 2244(d) only regulates

---

**3.** The dissent in *Lindh* identifies habeas proceedings as "tertiary conduct" under *Landgraf*. *Lindh*, —— U.S. at ——, 117 S.Ct. at 2070 (Rehnquist, C.J., dissenting).

secondary conduct, it does not have a retroactive effect.

We accordingly find that the one-year limitation of § 2244(d) applies to Jenkins' habeas petition. Although Congress's intent as to the date of effectiveness is not entirely clear, the statute does not have a "retroactive effect" because it only limits Jenkins' secondary conduct. The result is draconian but not unconstitutional, so we must follow Congress's lead.

### B. *Limitation Period Has Expired*

Having determined that § 2244(d) of the AEDPA applies to Jenkins' petition, we must examine if the one-year period of limitation expired before Jenkins filed this petition. Jenkins made no claims that implicate § 2244(d)(1)(B), (C), or (D). The direct review of his conviction concluded over nine years ago, and the last denial of his state post-conviction relief occurred over a year and eleven months before this petition. We conclude that the limitation period expired, so dismiss Jenkins' petition.