William G. ZUERN, Petitioner,

v.

Arthur TATE, Jr., Warden, Respondent.

No. C–1–92–771.

United States District Court,
S.D. Ohio,
Western Division.

Aug. 7, 1996.

---

Kathleen Anne McGarry, Ohio Public Defender Commission, Columbus, OH, Lawrence Joseph Greger, Sharon Lynn Ovington, Greger and Ovington, Dayton, OH, for William G. Zuern.

Lee Fisher, Attorney General, Office of the Attorney General of Ohio, Columbus, OH, Charles L. Wille, Assistant Attorney General, Capital Crimes Section, Columbus, OH, Stephanie L. Harris, Ohio Attorney General, Capital Crimes Section, Columbus, OH, for Arthur W. Tate, Jr. and State of Ohio.

## OPINION AND DECISION ON THE APPLICABILITY OF THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 (PUB.L. NO 104–132, 110 STAT. 1214)

MERZ, United States Magistrate Judge.

In this habeas corpus case Petitioner William Zuern seeks relief from his conviction and sentence of death in the Hamilton County Common Pleas Court. On April 24, 1996, between sessions of his evidentiary hearing in this case, Congress adopted and the President signed the Antiterrorism and Effective Death Penalty Act of 1996 (the "Act") (Pub.L. No. 104–132, 110 Stat. 1214). The Court requested and the parties have filed memoranda on the interpretation and potential application of the Act to this case and that question is now ripe for decision.

▮ The Act contains no effective date and is therefore effective on the date of enactment. Absent a clear direction by Congress to the contrary, a statute takes effect on the date of its enactment. *Gozlon–Peretz v. United States,* 498 U.S. 395, 404, 111 S.Ct. 840, 846, 112 L.Ed.2d 919, 930 (1991), citing *Robertson v. Bradbury,* 132 U.S. 491, 10 S.Ct. 158, 33 L.Ed. 405 (1889), and *Arnold v. United States,* 9 Cranch 104, 119–20, 3 L.Ed. 671 (1815); *Qasguargis v. INS,* 91 F.3d 788 (6th Cir.1996).

### SPECIAL DEATH PENALTY PROVISIONS

▮ Chapter 154 of Title 28, added by the Act, provides special procedures to be followed in capital habeas corpus cases if, but only if, the State from which the conviction comes has a capital case process which conforms to 28 U.S.C. § 2261, which provides in pertinent part:

(a) This chapter shall apply to cases arising under section 2254 brought by prisoners in State custody who are subject to a capital sentence. It shall apply only if the provisions of subsections (b) and (c) are satisfied.

(b) This chapter is applicable if a State establishes by statute, rule of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners whose capital convictions and sentences have been upheld on direct appeal for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

(c) Any mechanism for the appointment, compensation, and reimbursement of counsel as provided in subsection (b) must offer counsel to all State prisoners under capital sentence and must provide for the entry of an order by a court of record—

(1) appointing one or more counsels to represent the prisoner upon a finding that the prisoner is indigent and accepted the offer or is unable competently to decide whether to accept or reject the offer;

(2) finding, after a hearing if necessary, that the prisoner rejected the offer of counsel and made the decision with an

understanding of its legal consequences; or

(3) denying the appointment of counsel upon a finding that the prisoner is not indigent.

(d) No counsel appointed pursuant to subsections (b) and (c) to represent a State prisoner under a capital sentence shall have previously represented the prisoner at trial or on direct appeal in the case for which appointment is made unless the prisoner and counsel expressly request continued representation.

§ 107(c) of the Act provides "Chapter 154 of title 28, United States Code (as added by subsection (a)) shall apply to cases pending on or after the date of enactment of this Act." Since this case was pending on the relevant date (April 24, 1996), Chapter 154 will apply to it if, but only if, the Ohio process for providing counsel to capital prisoners in post-conviction proceedings as of the date Mr. Zuern's conviction became final on direct appeal conformed to 28 U.S.C. § 2261.

Respondent argues strongly for applicability of Chapter 154 to this case, but the Court concludes that Ohio's procedure for providing counsel in post-conviction proceedings plainly does not comply with 28 U.S.C. § 2261(b) and (c) in at least the following respects:

1. Although the Ohio Public Defender has been providing representation to capital defendants in Ohio Revised Code § 2953.21 proceedings and *Murnahan* proceedings since that decision was handed down[1], it is not compelled to do so by statute, since it (and county public defenders who might possibly undertake such cases) is free to reject a case which it determines is without merit.

See *State v. Crowder*, 60 Ohio St.3d 151, 573 N.E.2d 652 (1991).[2]

2. When the Ohio Public Defender does serve, it does not do so by virtue of "entry of an order by a court of record," but § 2261(c) reads "Any [such appointment] mechanism ... **must** provide for the entry of [such an order]."

3. The Ohio post-conviction process does not provide compensation and reasonable litigation expenses. As noted by Petitioner, most Ohio counties have extremely low caps on the amounts to be spent on representation in such cases.

4. The Ohio post-conviction process does not "offer" counsel to capital prisoners in the manner contemplated by the Act. As Respondent concedes, under the Ohio Public Defender statute, a prisoner might well have to prepare his or her own § 2953.21 petition and hope for appointment thereafter, yet preparation of the petition itself is subject to important technical pleading requirements under Ohio case law. See *State v. Barnes*, 7 Ohio App.3d 83, 454 N.E.2d 572 (1982).

5. The Ohio process does not provide by statute or rule of the Supreme Court "standards of competency for the appointment of [post-conviction] counsel,[3]" but § 2261(b) says it "**must** provide [such] standards ..."

The Ohio process also does not preclude appointment of the same counsel on post-conviction petition as represented the prisoner at trial or on direct appeal, but § 2261(d) requires different counsel be appointed unless the prisoner and counsel both request otherwise.[4]

None of this is said to denigrate Ohio's efforts actually to provide representation to

---

1. *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992), holds that Ohio's post-conviction relief statute, Ohio Revised Code § 2953.21, is not available for claims of ineffective assistance of appellate counsel and sets up an alternative process, later codified at Ohio R.App.P. 26(B).

2. In his Reply Memorandum (Doc. # 269), Petitioner cites two capital cases assigned to Judge Susan Dlott in which she has entered orders finding prima facie that Crowder makes Ohio not an opt-in State. This Court further understands that similar orders have been entered by all of

the judges of this Court resident in Columbus to whom capital cases have been assigned.

3. The Affidavit of Harry Reinhardt (attached to Doc. # 269), Petitioner's expert witness in this case and a member of the Ohio Supreme Court's Rule 65 Committee, belies any interpretation of C.P.Sup.R. 65 as creating such standards.

4. Compliance with § 2261(d) is not expressly required by § 2261(a) for Ch. 154 applicability, but in itself imposes a requirement on state post-conviction process.

capital defendants. As pointed out in Respondent's Memorandum, the Ohio Public Defender has expended enormous efforts to provide such representation. The Ohio Supreme Court has likewise established standards for training and certifying counsel to handle these most difficult cases at the trial and appellate levels. Indeed, Respondent makes a strong argument that Ohio provides substantially the level of service which § 2261 calls for.

However, Congress did not write § 2261 in terms of substantial compliance. Rather, the section is replete with mandatory language. Indeed, although Respondent argues Congress did not intend to create a federal "model" which States must follow, that seems the most natural reading of § 2261.

Accordingly, the Court concludes that 28 U.S.C. Chapter 154 does not apply to this case.

## AMENDMENTS APPLICABLE TO ALL HABEAS CORPUS CASES

■ The Act also makes in § 104 a number of amendments to 28 U.S.C. Chapter 153 which are potentially applicable to this case. It inserts a new subsection (d) which reads as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

It redesignates former subsection (d) as (e) and rewrites it to read as follows:

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the offense.

Both parties agree that the standards for determining the applicability of the revisions to Chapter 153 are provided by *Landgraf v. USI Film Products,* 511 U.S. 244, ——, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994), but they disagree strongly on how *Landgraf* applies to this statute.

■ Several principles are to be discerned from *Landgraf* and the Supreme Court jurisprudence on statutory "retroactivity" which preceded it: A court is to apply the law in effect at the time it renders its decision. *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). However, retroactivity is not favored in the law and congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result. *Bowen v. Georgetown Univ. Hospital,* 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988). There is "apparent tension" between these expressions. *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990). The legal effect of conduct should

ordinarily be assessed under the law that existed when the conduct took place. *Kaiser*, 494 U.S., at 855, 110 S.Ct., at 1586.

A law is retrospective if it changes the legal consequences of acts completed before its effective date. *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987). "A statute does not operate 'retroactively' merely because it is applied in a case arising from conduct antedating the statute's enactment.... The conclusion that a particular rule operates 'retroactively' comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1499. This "default rule" of nonretroactivity in the absence of clear language "allocates to Congress responsibility for fundamental policy judgments concerning the proper temporal reach of statutes, and has the additional virtue of giving legislators a predictable background rule against which to legislate." *Landgraf*, 511 U.S., at ——, 114 S.Ct., at 1501. However, [w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." *Id.* "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S., at ——, 114 S.Ct., at 1502. The reason is that "[b]ecause rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Id.*

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a par-

> ty's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf*, 511 U.S., at ——, 114 S.Ct., at 1505.

We begin as *Landgraf* instructs by determining "whether Congress has **expressly** prescribed the statute's proper reach (emphasis supplied)."

Petitioner argues we should find Congress has clearly implied the amendments to Chapter 153 do not apply to pending cases by pointing out that Congress did expressly provide that new Chapter 154 would be applicable to pending cases. Since Congress clearly thought about the problem and expressly provided for pending cases as to Chapter 154, its failure to do so for Chapter 153 must mean, the argument goes, it intended not to apply the Chapter 153 amendments to pending cases. In the words of one court to consider the matter, Congress knew how to provide for pending cases if it wanted to. *Warner v. United States*, 926 F.Supp. 1387 (E.D.Ark.1996).

Precise inferences are difficult to make from Congressional silence. Instead of contrasting Congressional silence on Chapter 153 with what it expressly said as to Chapter 154, we might, on the other hand, note that in the same Act Congress amended the fee section for capital cases but provided "The amendments made by this section apply to (1) cases commenced on or after the date of enactment of this Act...." Applying Petitioner's logic, this obverse inference would be that Congress knows how to provide prospectivity when it wants and it did so expressly in § 903 of the Act. Since it did not do so as to Chapter 153, it must have intended that the Chapter 153 amendments would not apply only prospectively and therefore would apply to pending cases.

Obviously, neither of these inferences is inescapable. Even if either one of them were particularly strong, neither would amount to the "express" Congressional provi-

sion which *Landgraf* says will settle the matter. We must look further.

The next stage of *Landgraf* analysis is to determine "whether the new statute would have a retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."

In *Landgraf* the Court adverted to the distinction between primary and secondary conduct in noting that applying new procedural rules at trials of events occurring before the rule was enacted does not raise retroactivity concerns. *Landgraf*, 511 U.S. at —, 114 S.Ct. at 1502, citing *Ex parte Collett*, 337 U.S. 55, 71, 69 S.Ct. 944, 952, 93 L.Ed. 1207 (1949); and *McBurney v. Carson*, 99 U.S. (9 Otto) 567, 25 L.Ed. 378 (1879).[5] The changes in habeas procedure made by the Act are in no way regulatory of primary conduct. That is, they in no way impair any primary rights Mr. Zuern possessed when he killed Philip Pence[6], increase his liability for that conduct, or impose new duties on him for that conduct.

Petitioner does not argue that the Act is retroactive in any sense as applying to his primary conduct of committing the homicide in suit. He argues instead that *Landgraf* requires deciding if the Act attaches new legal consequences to **any** events completed before its enactment, as if *Landgraf* made no distinction between primary and secondary conduct and forbade attaching new legal consequences to past events regardless of whether they were primary or secondary in character. That is, Petitioner seems to argue *Landgraf* forbids applying any new statute in such a way as to attach new legal consequences to any past act, primary or secondary. That cannot be the test. *Land-*

*graf* cites numerous examples of various kinds of new rules applied correctly by courts to events occurring before the rules were enacted.

*Landgraf* cautions judges to conduct retroactivity analysis with "familiar notions of fair notice, reasonable reliance, and settled expectations" in mind. *Id.*, 511 U.S. at —, 114 S.Ct. at 1499. The only such consideration suggested here by Petitioner is that state court judges, as elected public officials knowing the popularity of capital punishment, may have been less zealous in their enforcement of constitutional rights of the capitally accused, expecting a broader scope of review by the federal courts. Petitioner offers no proof that anything of the sort happened in this case; instead, he relies on general testimony and Alexander Hamilton's suspicion that "local spirit" will infect state judges.[7] In any event, no such reliance on the part of state judges (or on the part of parties who expected state judges to so rely) would be reasonable. All judges, federal and state, are bound by the same oath to support the Constitution of the United States. In its procedural default jurisprudence, the Supreme Court has been proclaiming at least since *Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), that habeas petitioners may not rely on any such supposed hostility to federal constitutional rights, but must raise all constitutional claims in the state courts.

The Court acknowledges that applying the Act to pending cases will disturb some "settled expectations," particularly in the capital habeas corpus bar, but those are not settled expectations of the sort *Landgraf* intended should be protected.[8] As the Supreme Court noted in quoting Lon Fuller:

---

5. The distinction is more thoroughly discussed in Henry M. Hart, Jr., and Albert M. Sacks, THE LEGAL PROCESS (edited by Eskridge & Frickey, 1994, pp. 127–37).

6. A hypothetical example of such a primary right might be found in a particular affirmative defense (excuse or justification) for killing which was then repealed by legislation after a homicide defendant acted.

7. Petitioner's Memorandum (Doc. #253) at 30, citing THE FEDERALIST No. 81 (Rossiter ed. 1961).

8. *Landgraf* itself refused to apply that portion of the 1991 Civil Rights Act which provided compensatory and punitive damages for discrimination in employment to acts of discrimination occurring before its effective date, thus declining to upset "settled expectations" that violations of Title VII would subject violators only to equitable relief.

If every time a man relied on existing law in arranging his affairs, he were made secure against any change in legal rules, the whole body of our law would be ossified forever.

*Id.,* 511 U.S. at ——, n. 24, 114 S.Ct. at 1499, n. 24, quoting Lon L. Fuller, THE MORALITY OF THE LAW, p. 60 (1964).

Because those portions of the Act amending Chapter 153 change habeas corpus procedure and standards for review of state court decisions, this Court concludes they are not retroactive in the sense forbidden by the presumption against statutory retroactivity adumbrated in *Landgraf.* Therefore it is appropriate to apply them to this and other habeas corpus cases pending on the Act's effective date.

The Court recognizes that its conclusion differs from that reached by a number of other courts considering these questions. See, e.g., *Boria v. Keane,* 90 F.3d 36 (2d Cir.1996); *Williams v. Calderon,* 83 F.3d 281 (9th Cir.1996) [9]; *Delarosa v. Portuondo,* 1996 WL 363106 (S.D.N.Y. 7/1/96); *Grady v. Artuz,* 931 F.Supp. 1048 (S.D.N.Y.1996); *United States v. Trevino,* 1996 WL 252570 (N.D.Ill. 5/10/96); *Cockrum v. Johnson,* 934 F.Supp. 1417, (E.D.Tex. 7/25/96); *Jones v. Barnett,* 1996 WL 400016 (N.D.Ill. 7/15/96). However, application to pending cases has also been found appropriate by other courts. See, e.g., *Lennox v. Evans,* 87 F.3d 431 (10th Cir.1996); *Leavitt v. Arave,* 927 F.Supp. 394 (D.Idaho 1996); *Moates v. Barkley,* 927 F.Supp. 597 (E.D.N.Y.1996); *Houchin v. Zavaras,* 924 F.Supp. 115 (D.Colorado 1996). *Compare Qasguargis v. INS,* 91 F.3d 788 (6th Cir.1996) (§ 440(a) of the Act effective to bar appeal of deportation order as of the date of enactment); *Mendez–Rosas v. INS,* 87 F.3d 672 (5th Cir.1996) (same, even as applied to an appeal pending on the effective date).

All these courts agree that *Landgraf* is the controlling precedent, but many stop with the first stage of the *Landgraf* analysis.

While the matter is not without doubt, this Court believes its analysis fits better with the *Landgraf* decision, Congressional intent to reform habeas practice, and the Supreme Court's general jurisprudence of retrospectivity.

## INTERPRETATION OF THE NEW ACT

In opposing application of the Act to this case, Petitioner expresses the fear this Court and others may adopt a radical interpretation of new § 2254(d) which would require a federal habeas court to defer to any reasonable state court interpretation of federal law in the case in suit, that is, to defer unless no reasonable jurist could have reached the same conclusion the state court did. See Petitioner's Memorandum (Doc. # 253), pp. 35–75. As exhaustively demonstrated by Petitioner, such an interpretation is not suggested by the language of § 2254(d) and was repeatedly rejected by the Act's drafters and supporters, and by the President in signing the legislation. In addition, the suggested interpretation would also raise very serious constitutional questions. Respondent makes only the slightest suggestion of an argument for this radical interpretation with no evidence that it is the correct one.[10] To adopt this radical reading of § 2254 would be to give the supporters of the Kyl Amendment by interpretation would they could not obtain in a straight vote in Congress. A less democratic mode of statutory interpretation would be hard to imagine.

The Court concludes the Act leaves intact the power and duty of federal courts to review *de novo* state court determinations of pure questions of federal law and mixed questions of law and fact.

The Act does provide a new temporal choice of law rule: petitioners are entitled to relief only if their conviction violated clearly established federal law as determined by the United States Supreme Court. As is evident from the legislative history cited by Petitioner, Congress intended by this provision to shield convictions which complied with feder-

---

**9.** *Williams* is cited as contrary authority because that is the way other courts have read it. Actually, the Williams court avoided the question of retrospective application by construing Mr. Williams' petition as filed before April 24, 1996.

**10.** Respondent argues Mr. Zuern cannot reasonably have expected to get *de novo* review because the new Act changes the jurisdiction of federal courts to issue the Writ.

al law when entered from reversal by later habeas courts applying "new" law. This new standard is a codification and somewhat of a modification of the Supreme Court's case law retroactivity doctrine in *Teague v. Lane,* 489 U.S. 288, 103 L.Ed.2d 334, 109 S.Ct. 1060 (1989) and its progeny.

New § 2254(e) modifies the standards for granting an evidentiary hearing and for evaluating state court fact determinations. It modifies old § 2254(d) by eliminating the exceptions to the presumption of correctness of state court fact finding and codifies *Townsend v. Sain,* 372 U.S. 293, 313, 83 S.Ct. 745, 757, 9 L.Ed.2d 770 (1963), and *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992). Operating on the principle of applying the law in effect at the time of the decision, this Court will leave standing its prior decision to grant an evidentiary hearing in this case. However, applying the same principle, the Court will apply the new statute in evaluating the state court determinations of fact. That is, they will be presumed to be correct unless clearly erroneous, that is, unless Petitioner establishes they are incorrect by clear and convincing evidence.[11]

As thus interpreted, the Act will be followed in adjudicating this case on the merits.

---

**11.** The clear and convincing test requires the same degree of certainty that a proposition is true as the clearly erroneous test requires in showing that a proposition is untrue. *Concrete Pipe and Products v. Construction Laborers Trust for Southern California,* 508 U.S. 602, 113 S.Ct. 2264, 124 L.Ed.2d 539 (1993).