Dobie Gillis **WILLIAMS**

v.

Burl **CAIN, Warden, Louisiana State Penitentiary, Angola, Louisiana.**

Civil Action No. 96–1004.

United States District Court,
W.D. Louisiana,
Alexandria Division.

Oct. 9, 1996.

Nicholas J. Trenticosta, New Orleans, LA, for plaintiff Dobie Gillis Williams.

Don M. Burkett, Burkett & Chevallier, Many, LA, for defendant Burl Cain, Warden, Louisiana State Penitentiary.

LITTLE, District Judge.

### REASONS FOR JUDGMENT

Habeas petitioner Dobie Gillis Williams presents a number of theories suggesting that his state court conviction was constitutionally infirm. The relief requested includes suspension, if not elimination, of the death penalty and a new trial, or certainly no less

than a retrial of the sentencing phase of his trial. For the following reasons, this court GRANTS Williams' petition for writ of habeas corpus and REMANDS this matter to the state trial court for the purpose of conducting a resentencing hearing and ultimately a sentencing.

## I. *Factual and Procedural Background*

No purpose will be served to describe in lurid detail the facts surrounding the murder for which Dobie Gillis Williams was found responsible. A vivid account appears in the Louisiana Supreme Court decision. *State v. Williams*, 490 So.2d 255 (La.1986), *reh'g denied*, 490 So.2d 255 (La.1986). For the sake of completeness, however, we mention a few essential details. Shortly after midnight on 7 July 1984, Mrs. Sonja Knippers awoke and went into her bathroom. She closed the door only to discover Williams in the bathroom, pantless and brandishing a knife. Williams had gained access to the room by climbing on boxes he had stacked below a window and cutting a screen. Mrs. Knippers yelled, hollered, and attempted to avoid Williams. Williams locked the bathroom door, stabbed Mrs. Knippers eight times, departed hastily through the bathroom window and returned to the house of his grandfather. During these crowded moments the victim's screams awoke her husband, who attempted to break down the locked door, but to no avail. After Williams fled, Mrs. Knippers unlocked the door. Her husband assisted her to a couch in the living room. There, in his arms, she bled to death.

The husband could not identify the intruder. He did tell the police, however, that he heard his wife yelling about a black man trying to kill her. Williams was in Many, Louisiana, staying a short distance from the Knippers' residence. Ordinarily Williams would be immured at Camp Livingston where he was serving a sentence after having been convicted of attempted simple burglary. But Williams had been given a five-day furlough from prison to visit his relatives in Sabine Parish, Louisiana, hence his authorized presence in the victim's neighborhood.

The police, who were aware of Williams' permitted absence from incarceration and his proximity to the victim, picked him up for questioning. Williams ultimately confessed to the crime and identified the locations of the murder weapon and a bloody shirt. Forensic evidence unquestionably supported the confession.

Williams was indicted by the Sabine Parish Grand Jury of first degree murder. La.Rev. Stat. § 14:30. Trial venue, at the defendant's request, was changed to Grant Parish, Louisiana. The defendant was convicted at the jury trial. At the sentencing phase of the trial, death was the unanimous decision of the jury due to the presence of two aggravating circumstances, to wit: the offender was engaged in the perpetration of aggravated burglary or the attempted perpetration of aggravated rape; and the offense was committed in an especially heinous, atrocious, or cruel manner.

The defendant has exhausted all state court remedies and is properly before this court.[1] We find all but two of the protestations of the defendant to be meritless. The primary issue that warrants our attention is the inadequacy of counsel, or more aptly, the lackluster performance by Williams' attorney at the sentencing stage of trial. So deficient in professional fulfillment of representational skills was the defendant's attorney that one must conclude that Williams was without any legal representation at this life or death segment of his trial. Some detail is essential.

Louisiana law requires a sentencing hearing subsequent to a guilty verdict in a capital case. *See* La.Code Crim.Proc. art. 905 *et seq.* Specific articles in the Louisiana Code of Criminal Procedure describe explicitly the scope of the sentencing hearing and particularly the evidence to be considered by the jury. We observe that article 905.2 sets the tone for a sentencing hearing: "The sentencing hearing shall focus on the circumstances of the offense and the character and propensities of the offender...." The following article directs the jury to consider any mitigating circumstances before reaching a decision on penalty. "A sentence of death shall not be imposed unless the jury finds beyond

---

1. Upon petition by Williams, this court on 1 May 1996 stayed his execution.

a reasonable doubt that at least one statutory aggravating circumstance exists and, after consideration of any applicable mitigating circumstances, recommends that the sentence of death be imposed...." La.Code Crim.Proc. art. 905.3.

There are a number of examples of "mitigating circumstances" itemized in article 905.5, but that statute also authorizes a defendant to introduce "any other relevant mitigating circumstance." La.Code Crim.Proc. art. 905.5(h). The definition of "mitigation" is not arcane. In common usage, confirmed in any dictionary, "mitigate" means to make milder, less painful, or less rigorous. Thus, the obvious command of Louisiana law is for the defendant to present evidence that may convince at least one juror that something less than death would be the appropriate penalty. The jury must agree on a death penalty or must agree on a life in jail penalty. If they can't agree, then the judge must sentence to a life in jail penalty. La.Code Crim.Proc. art. 905.8. Hence, all the defendant need do to save his life is convince one juror that the death penalty should not be employed. La.Code Crim.Proc. arts. 905.6, 905.8.

At the sentencing stage of the trial, counsel for the defendant made this opening promise to the jury:

"... [Y]ou must consider whatever mitigating circumstances arose out of the case. Mitigating circumstances are that the offender had no significant prior history of criminal conduct; the offense was committed while the offender was under the influence of extreme mental or emotional disturbance; at the time of the offense the capacity of the offender to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired as a result of mental disease, or defect, or intoxication; the youth of the offender at the time of his offense. You see Dobie, he's a kid, he's twenty-four, he was twenty-three; and, any other relevant mitigating circumstances, any other relevant mitigating circumstances. *You should consider all that are presented. And, in fact, I think you must consider all the mitigating circumstances, any miti-*

*gating circumstances which are presented.... * I ask you to consider what will be presented at this Sentencing Hearing and afterwards to render a just and fair decision.

*State of La. v. Williams,* La.Dist.Ct., Trial Transcript, p. 1016–17 (Wright, J., 35th Jud. Dist., Parish of Grant, May 13, 1985) (emphasis added). Defendant's counsel, however, called no witnesses and introduced no evidence at the sentencing hearing. *Id.* at 1039. Counsel's presentation was limited to eleven cross-examination questions to Larry Wayne Gene, the administrator for Camp Beauregard, as to Williams' furlough. *Id.* at 1033–34. Counsel did not introduce evidence of the background, upbringing, family values, treatment, experiences, attention, or punishments to which the defendant was exposed during his formative years. Evidence also existed as to the diminished intellect of the defendant. The defense should have brought out that Williams is a borderline, slow learner; that he was a consummate drinker and drug taker; that he, like other family members, attempted suicide.

It is uncontroverted that all of this information was readily available from family members and even presumably from the defendant, but had never been collected, let alone considered, by counsel for the defendant. We are neither weighing a conscientious decision of an attorney to tender or withhold a particular piece of evidence, nor evaluating a trial strategy, however lame, where one course of conduct is chosen over another. We must measure the mettle of one who never saw because he never looked. Does the failure to amass and collate the evidence we have referred to amount to an ineffective assistance of counsel, to such a degree as to render the defendant without representation at the sentencing session? We hold that Dobie Williams was without counsel during the penalty phase of his trial. The absence created a constitutionally impermissible condition.

This opinion proceeds in four parts. First, we consider the application of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which was enacted on 24 April 1996. Pub.L. 104–132, 110 Stat. 1217. The

AEDPA amends the habeas procedure under 28 U.S.C. § 2254. We conclude that even if the new habeas rules as amended by the AEDPA apply, the outcome is the same. Second, we consider the substance of Williams' claim of ineffective assistance of counsel at the sentencing stage. We conclude that Williams was denied the effective assistance of counsel at the sentencing stage of his trial and grant his petition for writ of habeas corpus on that ground. Third, we consider whether a death sentence after the ineffective assistance of counsel at the sentencing stage of trial constitutes cruel and unusual punishment where counsel's failures preclude the jury from considering mitigating evidence. We conclude that Williams' death sentence violates the Eighth and Fourteenth Amendments. Fourth, we consider Williams' nineteen other claims for relief and find each to be without merit.

II. *Application of Antiterrorism and Effective Death Penalty Act of 1996 does not affect outcome.*

The AEDPA was enacted on 24 April 1996, one day before Williams filed his petition with this court. Title I of the AEDPA significantly curtails federal habeas review.[2] Title I is itself divided into two separate sections, sections 101–106 and section 107. The issue here is whether and how the new procedural rules of each section apply to this petition.[3]

A. *Section 107: Capital Reforms*

Section 107 of the AEDPA (the "Capital Reforms") establishes new procedures applicable only to habeas petitions in death penalty cases. Notably, this chapter is effective *only* after a State:

> establishes by statute, rules of its court of last resort, or by another agency authorized by State law, a mechanism for the appointment, compensation, and payment of reasonable litigation expenses of competent counsel in State post-conviction proceedings brought by indigent prisoners

whose capital convictions and sentences have been upheld on direct appeal to the court of last resort in the State or have otherwise become final for State law purposes. The rule of court or statute must provide standards of competency for the appointment of such counsel.

28 U.S.C. § 2261(b).

In this case, section 107 of the AEDPA does not apply to Williams' petition because the triggering condition of 28 U.S.C. § 2261(b) has not been satisfied by the state of Louisiana. At the least, the State had not established standards of competency for the appointment of counsel in post-conviction proceedings at the time Williams' state claims were denied. *See, e.g.,* La.Rev.Stat. § 15:144.

B. *Sections 101–106: General Habeas Corpus Reform*

Sections 101–106 of the AEDPA (the "General Reforms") apply to all habeas petitions. Two of the General Reforms may be applicable here. First, the General Reforms create a new standard of review under 28 U.S.C. § 2254(d):

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Second, newly created 28 U.S.C. § 2254(e) establishes a presumption of correctness in

---

**2.** To what extent the AEDPA will reduce the seemingly endless occasions of judicial review to which capital cases are historically subject, we do not know. We do observe that over a dozen years have passed since the date Williams murdered the victim.

**3.** Neither counsel considered the application of AEDPA to this habeas matter.

state court factfinding that can be rebutted only by petitioner's presentation of "clear and convincing evidence." This standard replaces 28 U.S.C. § 2254(d)(8), which required the federal court to determine whether the factual determination of the state court was not "fairly supported by the record."

■ The question is whether the General Reforms apply to Williams' petition. Curiously, Congress did not state a date of effectiveness for the General Reforms. In contrast, Congress explicitly set an effective date for the Capital Reforms: "cases pending on or after the date of enactment of this Act." AEDPA § 107(c). Absent a clear direction by Congress to the contrary, a statute takes effect on the date of its enactment. *Gozlon–Peretz v. United States*, 498 U.S. 395, 404, 111 S.Ct. 840, 846–47, 112 L.Ed.2d 919 (1991), citing *Robertson v. Bradbury*, 132 U.S. 491, 10 S.Ct. 158, 33 L.Ed. 405 (1889). While we find that the AEDPA was in effect at the time Williams filed his petition with this court, that does not end our analysis.

Whether a new law should be applied retroactively to acts committed before enactment of the law was clarified by the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In *Landgraf*, the Court recognized the tension between two axioms. The first axiom is that "a court is to apply the law in effect at the time it renders its decision." *Bradley v. Richmond School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). The second axiom is that "[r]etroactivity is not favored in the law." *Bowen v. Georgetown Univ. Hospital*, 488 U.S. 204, 208, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988).

To relieve the strain, the Supreme Court in *Landgraf* set forth a two-part test to determine whether retroactive application of a law is appropriate. First, we must determine whether Congress has clearly expressed an intent that the statute be applied retroactively. *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505, 128 L.Ed.2d at 262. If Congress has clearly expressed an intention that a statute be applied retroactively, then the statute should be applied in accordance with that intent. *Id.* If Congress has not

clearly expressed its intention, then we move to the second level of analysis, "whether the new statute would have a retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the new statute would have a retroactive effect, then it does not govern. *Id.*

Federal courts have distinctly differed on whether the AEDPA should be applied retroactively. Some have found that the AEDPA does not apply to pending cases because that is what Congress intended. *United States v. Trevino*, 1996 WL 252570 (N.D.Ill.1996); *Warner v. United States*, 926 F.Supp. 1387, 1390 n. 4 (E.D.Ark.1996). At least one court has reached the opposite conclusion. *Leavitt v. Arave*, 927 F.Supp. 394, 397 (D.Idaho 1996). Courts also have reached inconsistent conclusions on the second part of the *Landgraf* test. Compare *Zuern v. Tate*, 938 F.Supp. 468 (S.D.Ohio 1996) (applying AEDPA retroactively), with *Boria v. Keane*, 90 F.3d 36 (2d Cir.1996) (denying retroactive application).

In the Fifth Circuit the retroactivity of the new habeas provisions in the AEDPA remains an unresolved question. *Mendez–Rosas v. I.N.S.*, 87 F.3d 672, 676 n. 5 (5th Cir.1996) (applying AEDPA § 440(a) retroactively, but explicitly offering "no opinion" as to the retroactivity of other provisions of the AEDPA); *Boyle v. Johnson*, 93 F.3d 180, 188–89 (5th Cir.1996), *petition for cert. filed*, (U.S. Sept. 23, 1996) (No. 96–6076) (declining to address retroactivity); *Cockrum v. Johnson*, 934 F.Supp. 1417, 1423–24 (E.D.Tex. 1996) (applying habeas procedures under both AEDPA and pre-AEDPA laws due to uncertainty).

We note that Congress did not clearly express an intention of retroactivity for the AEDPA General Reforms. We also note that applying the new standard of review might have the effect of increasing the liability of Williams for his past conduct by changing our standard of review. We do not, however, need to reach a conclusion on the retroactivity of the AEDPA as we reach the same conclusion under either the old habeas

act or the habeas act as amended by the AEDPA. *See Baylor v. Estelle,* 94 F.3d 1321 (9th Cir.1996) (adopting similar approach). We hold that under either version of 28 U.S.C. § 2554, Williams' petition is granted due to the ineffective assistance of counsel at the sentencing stage of his trial.

III. *Williams was denied effective assistance of counsel.*

Williams is entitled to effective representation of counsel. *Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2062–63, 80 L.Ed.2d 674 (1984). In *Strickland* the Court set forth the well-established two-part standard for evaluating effective assistance claims. Williams must show both: (1) that his attorney's performance fell below "an objective standard of reasonableness" as measured by prevailing professional norms, (*id.* at 688, 104 S.Ct. at 2064–65); and, (2) that the deficient performance prejudiced the defendant by depriving him "of a fair trial, a trial whose result is reliable." *Id.* at 687, 104 S.Ct. at 2064.

A. *State court finding of effective assistance is not binding on the federal court.*

■ State court findings of fact made in deciding an ineffectiveness claim are subject to the deference requirement of 28 U.S.C. § 2254. *Strickland,* 466 U.S. at 698, 104 S.Ct. at 2070. Under § 2254(e), as amended, state court factfinding is presumed correct and can be rebutted only by a showing of "clear and convincing evidence." [4] A state court conclusion that counsel rendered effective assistance is not binding on the federal court, however, as that question is a mixed question of law and fact. *Id.*

B. *Representation by counsel was far below reasonable.*

Williams argues that the failure of his counsel to investigate, let alone present, appropriate mitigating evidence at the sentencing phase of his trial fell below an objective standard of reasonableness. The state court found that the conduct of defense counsel

was reasonable. We disagree with the state's conclusion, and find that the objective test of *Strickland* is satisfied.

■ The failure to present mitigating evidence during the sentencing phase of a capital murder trial is not, per se, ineffective assistance of counsel. *West v. Johnson,* 92 F.3d 1385 (5th Cir.1996). Counsel has a duty, however, to make "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066–67. A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* Counsel's duty to investigate takes on supreme importance to a defendant in the context of developing mitigating evidence. *Strickland,* 466 U.S. at 706, 104 S.Ct. at 2074 (Brennan, J., concurring in part, dissenting in part). The right to present, and to have the sentencer consider, any and all mitigating evidence means little if defense counsel fails to search for mitigating evidence. *Id.* Accordingly, an attorney who fails to investigate readily available mitigating evidence for use in the penalty phase of a capital case deprives his client of effective assistance of counsel. *Loyd v. Whitley,* 977 F.2d 149, 158–59 (5th Cir.1992); *Bouchillon v. Collins,* 907 F.2d 589, 597 (5th Cir.1990); *Emerson v. Gramley,* 91 F.3d 898 (7th Cir. 1996).

Information concerning the defendant's background, education, employment record, mental and emotional stability, and family relationships is all valuable evidence, some or all of which could be mitigating in nature and could be considered for offering at the penalty stage. Comment to ABA Standard for Criminal Justice 4–4.1; *see Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064–65 (recommending that the ABA Standards for Criminal Justice provide a useful guide to reasonable standards of professional performance). Courts have found that borderline mental retardation, *King v. Puckett,* 1 F.3d 280, 284– 85 (5th Cir.1993); *Middleton v. Dugger,* 849

---

**4.** This standard replaces 28 U.S.C. § 2254(d)(8) which required the Federal Court to determine whether the factual determination of the state court was not "fairly supported by the record."

F.2d 491, 494 (11th Cir.1988), paranoid-schizophrenic personality and other mental illness, *id.; Loyd,* 977 F.2d at 158, prior suicide attempts, *State ex rel. Busby v. Butler,* 538 So.2d 164, 172 (La.1988), child abuse, *Jackson v. Herring,* 42 F.3d 1350, 1365 (11th Cir.1995), substance abuse, *id.; Middleton,* 849 F.2d at 494, and lifelong poverty, *Jackson,* 42 F.3d at 1365, are all probative mitigating circumstances in a sentencing hearing. Both federal and state courts have found that pleas of a mother or sister for a defendant's life are worthy of a jury's attention. *Jackson,* 42 F.3d at 1365; *State v. Sullivan,* 596 So.2d 177, 191 (1992), *rev'd on other grounds,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).

 In this case, where a reasonable investigation might have uncovered appropriate mitigating evidence, attorney Bonnette failed to investigate. Bonnette never collected routine institutional records from schools, employers, medical facilities or correctional centers. He spoke to Williams' estranged father on an unspecified subject but not to the mother Williams had lived with virtually all his life, his girlfriend, or other family members in order to discover Williams' disturbed family background. Bonnette failed to investigate Williams' history of mental illness, substance abuse and suicide attempts, although such evidence was readily available. Bonnette admitted that he did not investigate and prepare for the penalty phase because he believed Williams would not be convicted. An assumption that the jury will find the defendant innocent is simply an unreasonable excuse for lack of preparation for the penalty phase. *See Loyd* 977 F.2d at 157 (accepting state court finding that "defense counsel's failure to pursue a crucial line of investigation in a capital murder case was not professionally reasonable"); *Sullivan,* 596 So.2d at 191.

Bonnette did have Williams tested by a psychiatrist who failed to find evidence of schizophrenia. Yet schizophrenia may be but one possible type of mitigating evidence. Others were readily available, but Bonnette seems to have understood neither the importance of mitigating evidence in the penalty phase nor the importance of preparing for

that hearing. Where counsel is unaware of the importance of mitigating evidence under the law, the Fifth Circuit has held that failure to investigate is unreasonable. *Loyd,* 977 F.2d at 158.

This case is distinguishable from cases in which defense counsel makes a *strategic* decision not to put on mitigating evidence. *See Darden v. Wainwright,* 477 U.S. 168, 186, 106 S.Ct. 2464, 2474, 91 L.Ed.2d 144 (1986) (as counsel spent a great deal of time and effort preparing a defense and preparing for the sentencing phase, failure to present mitigating evidence was not reversible error, as it might have "opened the door" to damaging evidence not admitted at trial (477 U.S. at 185–86, 106 S.Ct. at 2473–74)); *Washington v. Johnson,* 90 F.3d 945, 953 (5th Cir.1996) (counsel interviewed defendant's relatives and hired a private investigator to discover positive mitigating evidence, but decided not to put on evidence when investigation disclosed defendant had sexually assaulted his brother, severed the heads of puppies with a lawnmower, and informed a parole officer that the next time he returned to jail it would be for murder); *West v. Johnson,* 92 F.3d at 1408 (defense counsel hired an investigator, communicated with the grandmother who raised defendant, and interviewed defendant, before deciding not to put on mitigating evidence); *Bell v. Lynaugh,* 828 F.2d 1085, 1090 (5th Cir.1987), *cert. denied,* 484 U.S. 933, 108 S.Ct. 310, 98 L.Ed.2d 268 (1987) (counsel carefully considered effects of mitigating evidence and made a strategic decision). In each of those cases, defense counsel investigated available mitigating evidence before making a decision not to present evidence.

This case is also distinct from cases in which the mitigating evidence is "double edged" and as such would be of no advantage to the defendant. *See Faulder v. Johnson,* 81 F.3d 515, 519–20 (5th Cir.1996), *petition for cert. filed,* (U.S. Aug. 6, 1996) (No. 96–5653) (possible mitigating evidence of family background double edged because defendant abandoned his children and their mother and had not communicated with his family for twenty years); *Boyle v. Johnson,* 93 F.3d 180 (5th Cir.1996) (counsel decided that evidence of violence and drug and alcohol abuse would

hurt the defendant more than it would help). In those cases, defense counsel investigated and considered the available mitigating evidence and decided against presenting it to the jury, as it would assist the prosecution. Deferring to the judgment of counsel, the court in those cases found the representation to be objectively reasonable.

In this case, as in *Loyd*, 977 F.2d at 158–59, Bonnette did not make a reasoned strategic choice not to present mitigating evidence. It is impossible to make a strategic decision about evidence when counsel does not investigate and gather the evidence. Bonnette never considered whether the available evidence was "double edged" and would strengthen the prosecution's case. Instead, Bonnette anticipated his client would not be convicted and did not prepare for the sentencing phase. It is not an overstatement to say that Williams was abandoned by counsel at the sentencing stage of his capital trial.[5]

### C. *Williams was prejudiced by ineffectiveness of counsel.*

To succeed in his claim of ineffective assistance, Williams also must demonstrate that he was prejudiced by his counsel's conduct. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. An accused is entitled to be outfitted with an attorney "... who plays the role necessary to ensure that the trial is fair." *Id.* at 685, 104 S.Ct. at 2063. The test, accordingly, is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686, 104 S.Ct. at 2064. The result of a proceeding can be unjust even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome. *Id.* at 694, 104 S.Ct. at 2068.

The state court found that even if all the possible mitigating evidence had been presented, such evidence "would not have changed the outcome on the sentencing phase." *Williams v. Butler*, La.Dist.Ct., Reasons for Judgment, p. 4 (Wright, J., 35th Jud.Dist., Parish of Grant, Sept. 7, 1988). We find this standard to be an inaccurate measure.

■ Where defense counsel fails to investigate available mitigating evidence, the defendant is prejudiced and the sentencing stage of the trial cannot be relied on as producing a reliable result. *Loyd*, 977 F.2d at 158–60; *Emerson*, 91 F.3d at 907; *Middleton*, 849 F.2d at 494–95. The failure to investigate available mitigating evidence prevents the jury from properly considering the evidence and making an informed sentencing decision. In this case, while we cannot be certain that the jury would have returned a life sentence had it heard the available mitigating evidence, we find that defense counsel's abdication of responsibility undermined the judicial process.

It is uncontroverted that the mitigating evidence that Bonnette failed to explore is the type of evidence that might be presented in mitigation at the sentencing stage of a capital trial. Williams' expert testified that the type of evidence defense counsel failed to explore has proved crucial in other cases with which he is familiar. *Williams v. Butler*, La.Dist.Ct., Evidentiary Hearing, pp. 131, 155 (Wright, J., 35th Jud.Dist., Parish of Grant, Aug. 15–16, 1988). The state's expert agreed that in every capital case he had tried the defense had put on humanizing mitigating evidence, and he admitted that he had lost two of those cases. *Id.* at 187, 193.

---

5. We wonder, but do not decide, if our holding here today will give rise to a new subspecialty in criminal law, i.e., the art of ineffective assistance of counsel. The intentional failure to scour out mitigating evidence, if any at all is later found to exist, will assuredly result in a retrial of the penalty phase of the trial. Must the trial judge, in an effort to avoid the consequence of such a strategy, require the defense attorney to detail his intended investigative activity, and if it is found to be wanting, order a continuance until the sleuthing is completed? In capital cases where the court appoints counsel, should a separate penalty phase attorney be appointed, who will from the outset be responsible for unearthing mitigating evidence, or the lack of same? Previous cases in which a decision not to introduce mitigating evidence has been found consistent with effective assistance have emphasized that lawyer and judge warned the defendant of the consequences. *Blystone v. Pa.*, 494 U.S. 299, 306 n. 4, 110 S.Ct. 1078, 1083 n. 4, 108 L.Ed.2d 255 (1990); *Silagy v. Peters*, 905 F.2d 986, 1007 (7th Cir.1990).

When the Fifth Circuit has rejected a habeas petition on the primary ground that the defendant was not prejudiced by his attorney's failure to present mitigating evidence, it has frequently concluded that the evidence the sentencing jury did not hear was "double-edged" and might actually have prejudiced the defendant's cause, or was of relatively limited weight. *See, e.g., Faulder,* 81 F.3d at 519–20 (where defendant sought to show he had brain disorder but was loving family man and had good upbringing, evidence was "double edged" because it would permit the state to introduce evidence of lucidity at time of murder, high intelligence and abandonment of his wife and family); *Motley v. Collins,* 18 F.3d 1223, 1228 (5th Cir.1994), *cert. denied,* — U.S. —, 115 S.Ct. 418, 130 L.Ed.2d 333 (1994) (prejudice prong not satisfied where evidence would merely corroborate substantial trial testimony); *Prejean v. Smith,* 889 F.2d 1391, 1400 (5th Cir.1989), *cert. denied,* 494 U.S. 1090, 110 S.Ct. 1836, 108 L.Ed.2d 964 (1990) (violent acts in the past, some against family members, made testimony of family members "doubled edged," and it was not prejudicial not to present it).

By contrast, in Williams' case the character and volume of the mitigating evidence could make it quite persuasive to a jury. His sad upbringing, mental infirmities, and other debilitating life circumstances were mostly not of his own making, as his brothers' considerable psychological problems reveal. That he behaved well in school despite failure to succeed academically and formed several positive interpersonal relationships could suggest that he is not completely irredeemable. Though it is true that the Sanity Commission determined that Williams was not schizophrenic or retarded, his intelligence quotient is clearly quite low. While Williams may have been capable of standing trial, there is considerable evidence that he has never been entirely balanced. Further, the evidence is not double edged as most frequently defined by the Fifth Circuit. Though Williams had committed other crimes, they were not violent crimes. Most importantly, the jury had already heard that Williams was out on furlough when he committed this crime, so additional evidence of his past crimes merely would have repeated what the jury already knew.

In *Middleton,* where the court was evaluating the failure to present mitigating evidence of a volume and character similar to that in this case, the court found the extent of the evidence very persuasive in concluding that the defendant was prejudiced. 849 F.2d at 494–95. The *Sullivan* court believed that if the jury had heard evidence of child abuse, mental illness, maternal love and pleas for his life, there was a reasonable probability that the jury would have recommended a life sentence. 596 So.2d at 191.

In this case, the volume and character of the available mitigating evidence could have changed the tone of the entire sentencing hearing. Williams had as much mitigating evidence in his favor as the defendant in *Middleton,* and it was similar to the type of evidence in both *Middleton* and *Sullivan.* By failing to investigate the available evidence, however, defendant's counsel prevented the jury from reliably performing its duty and undermined the fairness of the judicial process. As Williams' death penalty is the product of an unjust process, we grant his habeas petition and remand this matter to the state court.

IV. *Where defendant's counsel provided ineffective assistance at the sentencing stage of trial by failing to investigate and present mitigating evidence, the death penalty violates the Eighth Amendment.*

██ Williams argues in his Twelfth Claim that in light of his counsel's ineptitude at the sentencing stage, his death sentence violates the Eighth Amendment. The Supreme Court has held that to satisfy the Eighth Amendment "the sentencer may not refuse to consider or be precluded from considering 'any relevant mitigating evidence'" when it makes a death sentence. *Skipper v. South Carolina,* 476 U.S. 1, 4, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986) (quoting *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982)). As we have held that the failure of Williams' counsel to investigate and discover mitigating evidence at the sentenc-

ing stage of his capital trial constitutes ineffective assistance of counsel in violation of the Sixth Amendment, we also find that Williams' death sentence under these particular circumstances violates the protection against cruel and unusual punishment embodied in the Eighth Amendment. The sentencing stage of this trial reached the same result as if the judge had told the jury not to consider any mitigating evidence. *Eddings,* 455 U.S. at 109, 102 S.Ct. at 873–74. By failing to investigate the available mitigating evidence, Williams' counsel precluded the jury from considering mitigating factors to a death sentence. We hold that executing a defendant when the jury was precluded from considering mitigating factors by the ineffective assistance of counsel would violate the Eighth Amendment. For that reason, we grant Williams' Twelfth Claim for habeas relief.

Williams also argues in his Twelfth Claim that because he is mentally retarded his death sentence violates the Eighth Amendment. Even if we were to find Williams mentally retarded, which we do not, the Supreme Court has held that the execution of a person with moderate mental retardation is not prohibited by the Eighth Amendment. *Penry v. Lynaugh,* 492 U.S. 302, 340, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). We therefore deny the Twelfth Claim as to the proposition that the law prohibits a death sentence for the mentally retarded.

## V. *Each additional claim lacks merit.*

Williams raises nineteen additional claims for relief in his habeas petition.[6] As set forth below, we find each of these additional claims to be without merit and deny the petition as to those claims.

### A. *Second Claim: Detention in Violation of the Fourth Amendment*

 Williams maintains in his Second Claim that his initial detention on the night of the murder violated the Fourth Amendment as there was not "probable cause" for his detention. The Louisiana Supreme Court

appropriately addressed this issue and found that Williams' detention did not violate the Fourth Amendment because a prisoner released on furlough does not have a reasonable expectation of privacy. 490 So.2d at 260. As we find the state Supreme Court's ruling to be a reasonable application of the law, we deny Williams' Second Claim.

### B. *Third Claim: Involuntary Confession*

Williams' position in his Third Claim is that he is entitled to a new trial because his confession was induced by promises of leniency. Williams argues that evidence discovered after trial demonstrates that he was offered leniency in exchange for his confession. The trial court held evidentiary hearings on this issue and found that no threats or promises of leniency were made to Williams. *State v. Williams,* La.Dist.Ct., Reasons for Judgment, p. 5 (Wright, J., 35th Jud.Dist., Parish of Grant, March 2, 1992). That court denied Williams' Third Claim. As we find the state court's ruling to be a reasonable application of the law, we deny Williams' Third Claim.

### C. *Fourth Claim: Suppression of Evidence*

Williams states in his Fourth Claim that he is entitled to a new trial because his right to due process was violated by the state's suppression of a statement concerning the taping of Williams' confession. The trial court concluded that no such tape ever existed. *Id.* In light of the state court's finding, we deny Williams' Fourth Claim.

### D. *Fifth Claim: Prosecutorial Misconduct*

 Williams argues in his Fifth Claim that he should be permitted a new trial because prosecutorial misconduct violated his Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights. In particular, Williams asserts that the prosecutor failed to disclose photographs of Williams' legs before trial, asserted his personal beliefs concerning

---

**6.** Williams' petition skips from the Tenth Claim to the Twelfth Claim. In the interest of clarity, we address Williams' claims in the order raised and use a parallel numbering. Our ruling therefore does not address an "Eleventh Claim."

Williams' guilt during closing arguments, implied that Williams might be released on furlough if he were given life in prison, and had previously represented Williams on another criminal matter. The Louisiana Supreme Court found that the remarks made during closing argument did not deflect the jury's attention from the proper considerations. 490 So.2d at 263–64. The prosecutor's prior representation of the defendant on another matter is insufficient ground for a new trial. *See Louisiana v. Johnson,* 310 So.2d 600 (1975). As we find the state court's ruling on the closing argument to be a reasonable application of the law, and the remainder of Williams' argument to be without merit, we deny Williams' Fifth Claim.

### E. *Sixth Claim: Discrimination in Selection of Grand Jury Foreman*

Williams argues in his Sixth Claim that the discriminatory selection of the Sabine Parish grand jury foreman violated his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments. Williams argues that the foreman was selected through a process of racial and gender discrimination. Williams did not file a motion to quash before trial. The state court, after an evidentiary hearing, found there was no discrimination in the selection of the foreman. *Williams v. Whitley,* La. Dist.Ct. Case No. 33,481, Reasons for Judgment, p. 4 (Wright, J., 35th Jud.Dist., Parish of Grant, May 25, 1995). Taking direction from *Hobby v. United States,* 468 U.S. 339, 349–50, 104 S.Ct. 3093, 3099, 82 L.Ed.2d 260 (1984), we decline defendant's invitation to vacate his conviction because of discrimination in the selection of the foreman. Less draconian measures will suffice. 468 U.S. at 349–50, 104 S.Ct. at 3099.

■ Williams also asserts that his counsel's failure to object to the foreman selection process constitutes *Strickland* ineffective assistance of counsel. We find that counsel's failure to object to the foreman selection process did not prejudice the defendant. 466 U.S. at 687, 104 S.Ct. at 2064. The evidence against Williams was overwhelming. Accordingly, we deny Williams' Sixth Claim.

### F. *Seventh Claim: Unconstitutional Selection of Jury*

The point made in the petitioner's Seventh Claim is that the jury was unconstitutionally selected. Williams reasons that the jury was "death-qualified" to exclude jurors opposed to the death penalty. The removal for cause of prospective jurors who would not vote for the death penalty has been approved by the Supreme Court. *Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986). Williams' Seventh Claim therefore is without merit.

### G. *Eighth Claim: Louisiana Death Penalty Imposed Arbitrarily*

■ Williams' position in his Eighth Claim is that his conviction and sentence should be overturned because the death penalty in Louisiana is imposed in an arbitrary and discriminatory fashion. Williams supports his argument with citation to two statistical studies of Louisiana death sentences. Such statistical evidence alone, however, is not enough to prove discrimination. *See McCleskey v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, 1769, 95 L.Ed.2d 262 (1987). We do not find any evidence of racial bias specific to this case. Accordingly, we deny Williams' Eighth Claim.

### H. *Ninth Claim: Jury Selection Violated Equal Protection.*

The Ninth Claim, that the conviction violates equal protection under the Fourteenth Amendment because the prosecution utilized one of its five peremptory challenges to strike a black prospective juror, is also without merit. To succeed on such a claim, Williams, among other things, must raise an inference that the prosecutor used a peremptory challenge to exclude the veniremen from the petit jury on account of race. *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1722–23, 90 L.Ed.2d 69 (1986). In this case, there were race-neutral reasons for the prosecution's peremptory challenge. For that reason, we deny Williams' Ninth Claim.

### I. *Tenth Claim: Vague Aggravating Circumstance*

■ Williams argues in his Tenth Claim that his death sentence violates the Eighth

Amendment because one of the two aggravating circumstances used to sentence him has been found unconstitutionally vague. The jury in this case found the existence of two aggravating circumstances: (1) Williams was engaged in the perpetration of an aggravated burglary or the attempted perpetration of an aggravated rape; and (2) the offense was committed in an especially heinous, atrocious, or cruel matter. The Supreme Court has found the second aggravating factor to be unconstitutionally vague. *Maynard v. Cartwright*, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). In order to affirm a death sentence rendered in part on an invalid aggravating circumstance, a reviewing court may use a harmless error analysis or reweigh the evidence. *Clemons v. Miss.*, 494 U.S. 738, 753–54, 110 S.Ct. 1441, 1450–51, 108 L.Ed.2d 725 (1990). Williams asserts that the state court unconstitutionally analyzed his sentence by failing to use a harmless error analysis or to reweigh the evidence. We disagree. We find that the Louisiana Supreme Court properly reweighed the evidence under the assumption that the instructions for the second aggravating circumstance were defective. 490 So.2d at 262. We agree with the state Supreme Court's conclusion, moreover, that there was ample evidence to support a finding of an aggravating circumstance. Accordingly, we deny Williams' Tenth Claim.

J. *Fifteenth, Sixteenth, Seventeenth, and Eighteenth Claims: Conviction and Death Sentence are Unconstitutional Due to Defendant's Mental Retardation*

In each of these related claims Williams believes that his conviction or death sentence is constitutionally infirm due to his alleged mental retardation. Williams points out in his Fifteenth Claim that as a result of his mental retardation he did not knowingly waive his right to remain silent. In his Sixteenth Claim, Williams suggests that he was mentally incompetent to stand trial. Williams states in his Seventeenth Claim that his evaluation by the state Sanity Commission was incompetent. Finally, Williams claims in his Eighteenth Claim that due to his mental retardation he was unable to form the specific intent necessary for a first degree murder conviction.

The Louisiana Supreme Court, relying on a state Sanity Commission report, did not find that Williams was "mentally retarded." Instead, the court found Williams has a "low-average I.Q." and did not have schizophrenia or major affective disorders. 490 So.2d at 264. We do not find the state's factual determinations to be unreasonable. We accordingly deny Williams' Twelfth, Fifteenth, Sixteenth, Seventeenth, and Eighteenth Claims.

K. *Thirteenth Claim: Erroneous Jury Instruction*

Williams argues in his Thirteenth Claim that defective verdict forms and jury instructions violated his rights under the Eighth and Fourteenth Amendments. In particular, Williams argues that the forms and instructions led the jury to infer that they had to agree unanimously on a finding of mitigation before they unanimously could agree on a life sentence. Upon analyzing all the forms and instructions in this case, we find that they do not lead to the defective inference asserted by Williams. We therefore deny the Thirteenth Claim.

L. *Fourteenth Claim: Erroneous Jury Instructions*

Williams argues in his Fourteenth Claim that various jury instructions were defective. A conspicuous complaint is that the trial court committed reversible error when it told the jury its verdict was a "recommendation to the court." Here, as in *Louisiana v. Lindsey*, 543 So.2d 886, 903 (1989), there is no evidence to support Williams' contention that the jury was left with the mistaken impression that the ultimate responsibility for determining the death penalty did not lie with them. We find Williams' arguments to be without merit and deny the Fourteenth Claim.

M. *Nineteenth, Twentieth, and Twenty-First Claims: Death Penalty is Unconstitutional*

Williams asserts in these claims that his death sentence is unconstitutional because:

(19) lethal injection is a cruel and unusual punishment; (20) the death penalty is administered in an arbitrary and capricious fashion in Louisiana; and (21) the death penalty is an excessive and disproportionate penalty.

Williams makes no argument and cites no authority to support his assertion that lethal injection is cruel and unusual punishment. The Supreme Court has refused to stay an execution by lethal injection. *Skillern v. Procunier*, 469 U.S. 1182, 105 S.Ct. 945, 83 L.Ed.2d 956 (1985). There is no doubting the severity and permanence of the death penalty, but Williams' proposal that it is excessive has been rejected by the Supreme Court. *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). Finally, we find the position that the death penalty is administered arbitrarily in Louisiana to be without support in this case. For those reasons, we deny Claims Nineteen, Twenty, and Twenty–One.

N. *Twenty–Second Claim: Insufficient Evidence*

Finally, Williams claims that there was insufficient evidence to convict him of first degree murder. To the contrary, we find overwhelming evidence to support the conviction. We deny the Twenty–Second Claim.

VI. *Conclusion*

The death sentence of Williams is constitutionally deficient due to the ineffective assistance of his counsel at the penalty stage of trial. As it would be iniquitous to affirm the death penalty in this case, the petition for writ of habeas corpus is granted and the case is remanded to the state for resentencing.